## RICHARDSON v. PUMPHREY.

Where the affairs of a partnership formed for the purposes of planting were exclusively managed by one of the partners, who also acted as an overseer of the plantation, his failure to keep any regular account of his receipts and expenditures, will not be regarded as a badge of fraud, the education of such persons not generally qualifying them to do so.

Where one of the slaves put into a particular partnership was afflicted, at the time, with a chronic disease, of which he afterwards died, the partnership will not be chargeable with the loss. A stipulation in the contract of partnership that, in case any of the slaves should die, the owner should be paid therefor at the valuation fixed by the articles of partnership, does not apply where the slave perishes by the badness of his quality.

APPEAL from the District Court of St. Mary, *Overton*, J. *Maskell*, *Magill* and *Muse*, for the plaintiff. *T. H. Lewis*, for the appellant. The judgment of the court was pronounced by

ROST, J. This suit is instituted for the settlement of a partnership, entered into in January, 1836, between the plaintiff and the defendant, for the purpose of planting. The plaintiff claims $10,000, alleged to be due him by the defendant for his portion of the crop of sugar and molasses, and for the loss of slaves, who died during the partnership, The defendant denies the indebtedness, and alleges that he is not bound to pay for the slaves of the plaintiff who died during the continuance of the partnership, because they were unsound when they were put into it. The defendant has appealed from a judgment rendered against him for the sum of $2,097 30, with legal interest from judicial demand, and he asks that it be amended in his favor.

The defendant was the sole manager of the concern, and as he has kept no regular account of his receipts and expenditures, the settlement between him and his partner can only be made by approximation. With men of a different class, we would be disposed to consider the omission to keep books as a badge of fraud ; but it is not so with overseers and persons who follow their avocations. Their education does not generally qualify them for the task.

The calculation of the plaintiff's counsel as to the proceeds of the crops a p pear to us sufficiently accurate, and we will take those proceeds to have been $20,003 57. The defendant has paid plantation expenses amounting to $7,508 03, and the further sum of $800, the value of the slave *Viney*, who died during the partnership, is, according to the terms of the contract, to be added to those expenses. The defendant has offered in evidence three notes given by the plaintiff for the price of the land on which the partnership was carried on, amounting together to $7,400. The defendant had assumed to pay one-half of said notes, but he alleges that he has paid the whole, and claims the amount as a partnership debt satisfied by him. We think he has made out his claim. The notes are in his possession. *Wm. B. Lewis*, who received payment of the first, states that it was paid by the defendant. The account of *Lane, Fontaine & Co.* shows the second to have been satisfied out of the proceeds of the crops of the partnership, and it is not denied that the defendant paid the last.

The claim of the defendant for overseer's wages was properly rejected. He was bound, under the partnership agreement, to manage the place himself. The slave *Dennard* when put into the partnership by plaintiff, was afflicted with a chronic disease, of which he died. He perished by the badness of his quality, and the partnership is not bound to account for the loss. The sums for which the defendant is entitled to be credited, amount together to $15,708 03, which deducted from the proceeds of the crops as already stated, will leave a balance of $4,295 54, for one-half of which the plaintiff is entitled to a judgment, with interest from judicial demand.

It is therefore ordered that the judgment in this case be amended ; and that the plaintiff recover from the defendant the sum of $2,147 77, with interest at the rate of five per cent per annum, from the 1st April, 1841, until paid, and costs in both courts.