### No. 10,191.

MARSHALL J. SMITH VS. THE ATLAS STEAM CORDAGE COMPANY.

A suit brought by one in his individual name, but in reality for the benefit of non-residents, as owners of the claim sued on, must be viewed as instituted by the constituents themselves, who must be considered as the *real* plaintiffs in court.

The authority of the constituents to bring the suit implies the power to stand in judgment to resist any defense or claim which the defendant may set up, either against the original demand, or on any other ground, however disconnected from the principal demand.

In such a case the defendant has a right to reconvene and his demand must be noticed by the original plaintiffs without the necessity of a citation to them.

Smith vs. Atlas Cordage Co.

The court before which the action was instituted had jurisdiction over the reconventional demand. the more so, when it has been put at issue by the defendants therein, by plea and proof.

Payment of a debt to the authorized agent of the representative of a creditor company, extinguishes the claim and discharges the debtor.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe*, J.

---

*Henry C. Miller* and *Thomas J. Semmes* for Plaintiff and Appellant :

1. The holder of an obligation for money payable to bearer, is, by virtue of his possession. vested with the legal title, and may bring suit thereon in his own name, although the beneficial interest may belong to a third person ; and the debtor cannot inquire into the title of the plaintiff, except to set up equitable defenses to the obligation sued on — the defendant has no other right except that of defense. 2 N. S. 201 ; 2 La. 264 ; 4 N. S. 107 ; 5 La. 48 ; 4 La. 220 ; 18 La. 44 ; 2 Ann. 411 ; 4 Ann. 349 ; 30 Ann. 680 ; 32 Ann. 288.

2. The only plaintiffs who are in court for the purposes of reconvention or counter-claim or cross-bill are plaintiffs who were parties to the record, and it is only the defendant who can reconvene against the plaintiffs : for the plaintiffs cannot reconvene against the defendant. C. P. Arts. 374 to 377 ; 13 N. Y. 249 ; Mead vs. Buckner, 1 La. 282 ; 85 N. C. 363 ; Cross vs. Delvalle, 1 Wall. p. 1 ; Shields vs. Barrow, 17 Aow. 145.

3. Although reconvention, or counter-claim or cross-bill may be of Roman origin, yet in all systems the reconventional demand, or the counter-claim or the cross-bill is an auxiliary proceeding, and is confined to matters in question in the original suit : if its purpose be different from that of the original bill, it is not allowed : a cross-bill is generally considered a defense. 2 Dan'l Ch. Pr. 1548 ; Cross vs. Devalle. 1 Wall. 1 ; 7 John Ch. 252 ; C. P. 574– 377 ; 19 N. Y. 529 ; 4 John Ch. 357.

4. The reconventional demand in this case is purely statutory, and has no foundation in any principle other than that of supposed convenience, but the statue only applies to a non-resident plaintiff, who is a party to the record, and who is in court as a party to the suit. Parties to the record or parties to the suit are one thing, and the defenses which may be set up to suits brought by parties are quite another thing. The two must not be confounded.

*Omer Villeré* for Defendant and Appellee :

1. When the plaintiff resides out of the State. the defendant may institute against the former a demand in reconvention for any cause, even if such is not connected with or incidental to the principal.demand. C. P. 375 ; 4 R. 1 ; 10 Ann. 98 ; 16 Ann. 250 ; 27 Ann. 642.

2. When a reconventional demand has been filed. plaintiff is bound to take notice of same and no citation is necessary. 26 Ann. 540 : 23 Ann. 385.

3. Plaintiff can not plead his own turpitude in defense to a claim against him.

*J. McConnell* on same side.

---

The opinion of the Court was delivered by

BERMUDEZ, C. J. This suit is brought to recover the amount of overdue coupons of bonds issued by the defendant company for $1350 with a prayer for the recognition of the mortgage consented to secure their payment.

Defendant objected that the coupons were not the property of the ostensible plaintiff, but belonged to the firm of L. Waterbury & Co., of New York, against which it had a valid claim, largely in excess of the amount sued for, which they are seeking to avoid.

In answer to interrogatories propounded to him, the apparent plaintiff admitted that he had no interest in the coupons, which were the property of Waterbury & Co.

After filing exceptions, which were never passed upon and were considered abandoned, the defendant company, relying on the answers to the interrogatories and treating Waterbury & Co. as the *real* plaintiffs in court, reconvened against them, claiming from them $24,408 80 as the rent of certain property under a renewed lease and insurance premiums thereon, the former for $22,500, the latter for $1908 80, for a period extending from January 1, 1884, to July 1, 1885.

A plea of payment was then filed to this demand.

There was judgment for the nominal plaintiff, as agent of Waterbury & Co., for $1350 with interest, and on the reconventional demand for $24,408 80 with interest, against Waterbury & Co., the costs being apportioned. Waterbury & Co. appeal.

This Court has no concern with the main demand, which is beneath the lowest limit of its jurisdiction.

The contention between the litigants is :

1. Whether Waterbury & Co. can be considered as in court to stand the reconventional demand; in other words : Whether the court had jurisdiction over Waterbury & Co. on the reconventional demand.

2. If so, whether the plea of payment set up in extinguishment of the claim is established by the evidence.

## I.

There can be no doubt that, when Waterbury & Co. authorized Smith to bring the suit, they conferred upon him *impliedly* the power to stand in judgment for them to resist any demand which the defendant company could set up against them, either touching the coupons, or on any other ground, however disconnected from the main claim.

It is established beyond possible dispute, that where one sues as the agent of another, whether this is done avowedly *ab initio*, or is subsequently astertained, *he* is not the party plaintiff, but that his constituent, for whose benefit he acts, occupies the attitude of *real* plaintiff in the case.

It therefore follows that, as this suit was brought by Smith in his own name, but for account of Waterbury & Co., *they* and not *he*, were the

plaintiffs, and they stood in the controversy, as though the proceeding had been instituted directly in their name, as a commercial firm.

Such being the case, under the law of this State, the defendant company had a right to set up against them any claim of its own, however disconnected from the original demand. This the company could do, without citing Waterbury & Co., on the theory that, being already in court, they were bound, by the *lex fori*, to take notice of the defenses and counter claims of the defendant company.

It would, indeed, be monstrous, if the law allowed a non-resident to come here and press his demand before a State court, against a resident citizen debtor, and deny the latter the right of urging against the suing creditor such demand as he might have against him, relegating him to a direct suit only, to be brought either at the debtor's domicile or here, on attaching property which is not, or may never come, within judicial reach.

It would be placing absent creditors, plaintiffs in action in this State, on a better and preferable footing than that which a resident citizen would occupy, for, such citizen, in such suit, could be sued on a reconventional demand.

A law which would sanction such enormity would be iniquitous. Fortunately none such blots the codes of Louisiana.

The rule of practice is distinctly laid down, that, where the plaintiff resides out of the State, the defendant may claim in reconvention against him, for any cause, though the same be not necessarily connected with, or incidental to, the action, and that the original plaintiff shall be bound to answer, *without pleading to the jurisdiction* of the court. C. P. 375, sec. 2, 377.

Over the controversy growing out of the reconventional demand in the instant case, the district court had, therefore, undeniable jurisdiction, the more so, as the claims set forth in that demand were formally put at issue by the admission of the previous existence of the claims and by the distinct averment of the existence thereof by *payment*.

The conclusion thus reached is supported by both text writers and judicial adjudications, based on solid principles, all inclining and agreeing in that sense.

A special review of the authorities would prove cumbersome, and a mere reference to them suffices: Story on Conflict of Laws, § 557-8, n. 1; Wharton en Neg. Instr., § 882-3; 91 U. S. 406, 413; C. P. 15; 2 La. 264; 5 M. 525; 4 U. S. 481; 4 R. 1; 6 R. 18; 10 Ann. 98; 11 Ann. 113; 16 Ann. 250; 19 Ann. 532; 23 Ann. 385; 24 Ann, 18; 26 Ann. 87, 540; 27 Ann. 642; 30 Ann. 680, 808; 37 Ann. 803; 39 Ann. 105.

## II.

It appears, from two resolutions of the board of directors of the defendant company, passed on two different days (the 17th and 24th of May, 1884), that the claim of the company against Waterbury & Co. was sold to E. L. Ranlett for $15,000 in his draft at ten days on that firm, to be secured by collaterals, and that the claim sold was distinctly stipulated as including the rent in question, and that payment of that sum by Waterbury & Co. would discharge them from all liability under the lease.

The facts proved are that E. L. Ranlett was the secretary of the defendant company, with power to act as its treasurer, under its act of incorporation; that he drew a draft on Waterbury & Co. for $15,000, which was not honored; that, ready to settle on the basis of the resolutions, Waterbury & Co. authorized their counsel Fearn, as their attorney in fact, to draw on them for the amount, and that Fearn and Ranlett went together to the State National Bank, of which Kennedy was then president.

Under the authority delegated to him by Waterbury & Co., and fully aware of the resolutions, Fearn drew on them on May 26, 1884, a ten days' draft for $15,000, to the order of E. L. Ranlett, who indorsed it, to which was attached Ranlett's receipt for the amount of the draft.

On the handing over of both to Kennedy, to whom it seems that Ranlett had pledged certain bonds of the defendant company to secure an individual indebtedness, Kennedy turned over the bonds to Fearn, who carried them off, wholly ignorant of the business relations between Kennedy and Ranlett.

The claim was transmitted by Kennedy, through his bank, to the Bank of New York for collection.

Surely, had Fearn, as agent of Waterbury & Co., or had the latter themselves paid in cash the $15,000 to Ranlett, or had the receipt itself alone been simply presented to them without any reference to the draft, and had they paid it, no question of the validity of the payment could have arisen, as the resolution specified that, on payment of this sum, Waterbury & Co. would be discharged from the debt, including the rent.

Now, instead of doing this, Waterbury & Co., through Fearn, drew their draft on themselves in favor of Ranlett, who, through Kennedy, forwarded it to the New York bank for collection.

The practical difference between the supposed cases and the instant one, if any, is not discernible.

It is claimed that the receipt was not transmitted to New York with

the draft, as it was delivered here to Fearn on his furnishing the draft on Waterbury & Co.

A member of the firm of Waterbury & Co. heard as a witness, says it was delivered on payment of the draft. If, as is urged, it is true that Fearn received it in New Orleans, he does not say so, and does not state that it was not afterwards sent to New York.

After all, this is immaterial, as the receipt was designed on its face to be binding and conclusive only on payment of the draft. This having been done the debt was blotted out.

As concerns Waterbury & Co. it was a matter of utter insignificance who handled the draft, and to whom the money went.

Under the circumstances they must be deemed that they have acted in good faith, have fully satisfied the rent claim when they paid the draft, and that they are completely exonerated, as effectually as if they had paid their debt in cash to the President, Treasurer, Secretary and Board of Directors, and held their authentic voucher for such payment with a formal discharge.

It has not been deemed necessary to allude to the bonds pledged to Kennedy by Ranlett and delivered to Waterbury & Co., through Fearn, more than was done, as they are not considered as factors bearing on the sole important question of payment, which had to be determined regardless of the existence of the bonds.

This view of the case relieves us from considering a means of defense, touching the immorality of the contract, which was not stated in the beginning of this opinion.

It is therefore ordered and decreed that the judgment appealed from, on the reconventional demand, be reversed and annulled; and it is now ordered and adjudged that, on said demand, there be judgment against the Atlas Cordage Company and in favor of L. Waterbury & Co. rejecting said reconventional demand for ever, and that the costs of the lower court on said demand and those of this court be paid by the Cordage Company, plaintiff in reconvention.