The opinion of the court was delivered by
Watkins, J.
Plaintiff sues for three thousand one hundred and ten dollars and two cents as the balance due on a stated account annexed to his petition; and Ms claim is, first, for wages as overseer for ten and one-half months, in the year 1892, at fifty dollars per month, aggregating five hundred and twenty-five dollars; second, for supplies advanced to the defendant and used upon the plantation of which he had the management, and also for the service and use of Ms teams and implements in the cultivation of same, aggregating one thousand seven'hundred and sixteen dollars and eight and one-half cents; and third, for the value of one thousand and ninety sacks of rice at two dollars and seventy-five cents per sack, which was produced by plaintiff on the land of defendant, which was cultivated on shares.
The annexed account shows total amount of debits against defendant of five thousand one hundred and ninety-three dollars and eighty-three cents, subject to credits amounting to two thousand and eighty-three dollars and eighty-three cents — leaving the resulting balance stated above.
*1504 There is a discrepancy between the petition and the account in respect to the amount of the account for supplies and the labor furnished — the amount claimed in the petition being two thousand five hundred and eighty-five dollars and two cents, while that shown by the account is only one thousand six hundred and ninety-six dollars and thirty-eight and one-half cents. The latter is controlling.
The record shows that the plaintiff engaged his services to the defendant as an overseer on one of his plantations for the year 1892, and that the two made an agreement to cultivate one hundred acres of another place on shares during the same year — the plaintiff to receive two-thirds and the defendant one-third of the rice thereon produced.
In limine the defendant tendered several exceptions: (1) that the plaintiff has improperly cumulated inconsistent and contrary causes of action; (2) that the petition is vague and indefinite, not setting forth the dates, places and circumstances of the various contracts and covenants which are alleged upon with sufficient certainty to enable him to plead thereto; (8) that it does not set forth any agreement to furnish supplies, teams or implements for any particular plantation, and when made, either written or verbal; (4) that the allegations of the petition set forth no cause of action; (5) and, finally, that proper parties plaintiff were not made, because one Montgomery was a partner of plaintiff in the cultivation of the crop, which was cultivated on shares.
These exceptions having been overruled the defendant filed an elaborate answer, which is of the following tenor, viz.:
1. “That he employed plaintiff as overseer on his rice plantation in February, 1892, for the year, at fifty dollars per month; but that he only worked nine months, and left his premises in the early part of December, to the serious negject of his duty and to the great injury of the respondent.” That he paid him ninety-nine dollars and seventy-five cents on his account for services in April, 1892, and that it was agreed and understood between them that the residue of his wages were to be, by the defendant, retained as security for advances that were to be made by the defendant to the plaintiff, Torian, and his partner, Montgomery, to enable them to make and gather a crop of rice they cultivated with him on shares.
2. That Torian & Montgomery were wholly without means to make a crop for themselves, and that plaintiff never furnished a *1505 dollar in money, or its equivalent, to make a crop for the respondent, or to pay off his laborers.
8. That plaintiff did not do any hauling, ploughing, or any kind of work to make the crop, except with the teams of respondent; and that if the plaintiff so used his .own teams it was unauthorized, and not ratified by respondent, who had an abundance of teams of his own; and he consequently denies and disavows all liability on that score.
4. That he entered into a contract with Torian & Montgomery to cultivate one hundred acres of land in rice, on shares at their own expense, one-third of which was to belong to respondent and two-thirds to Torian & Montgomery. That all of said crop was to be shipped to the account of the respondent, and that he was to be reimbursed from the proceeds thereof the value of supplies he may have made to them on the partnership crop.
5. He charges that'during his absence Torian & Montgomery worked their crop and his, indiscriminately, cut and harvested his and their crops together — all without his knowledge or authority— and- so as to render same indistinguishable. That they secretly shipped to G. W. Sentell & Co., in violation of their contract, three hundred (800) sacks of rice, which was sold for their account, and for which they retained the proceeds. That they likewise shipped the remainder of the crop to Flower & King, and retained the proceeds until they were forced to surrender same, under threats of a criminal prosecution.
The answer admits all the credits enumerated on the plaintiff’s account — alleging same to have been for the supplies he had furnished Torian & Montgomery.
He alleges, further, that he advanced them during the year 1892 the sum of four thousand and forty-seven dollars and ninty-four cents in supplies, for which the firm of Torian & Montgomery are indebted to.him.
He prays that the plaintiff’s demands be rejected, in so far as they conflict with the averments of this answer; and that he have judgment in his favor, declaring that the planting partnership of Torian & Montgomery carried on a rice-planting adventure with respondent on shares, whereunder said firm was to receive two-thirds and respondent one-third of the crops produced; and that he have and recover from them, on his reconventional demand, the sum of four *1506 thousand and forty-seven dollars and seventy-four cents for advances and supplies furnished to make the crop. That they be credited with two-thirds of the proceeds of che rice when sold, or its value when ascertained; and that the plaintiff, Torian, be credited with the amount of his overseer’s wages for nine months, less the sum of ninty-nine dollars and seventy-five cents — the defendant to have judgment for the resulting balance in his favor.
A trial was had on the issues thus made up, and a judgment rendered in favor of the plaintiff for the sum of four hundred and thirty-nine dollars and twenty-two cents — rejecting defendant’s re-conventional demand as of non-suit.
After an unsuccessful effort to obtain a new trial, the plaintiff appealed, and in this court assigns that he is entitled to have the judgment in his favor so increased as to award him the full amount he claimed in the petition; and the defendant joins in the appeal and demands judgment over against the plaintiff for one thousand and thirty dollars and seventy-two cents and all costs.
As it is a question of serious controversy between the parties, and urged by the defendant in exception, answer and argument, we must determine at the beginning whether Montgomery and the plaintiff, ToriaD, were partners in the planting enterprise; and answering that query, we will state that the evidence satisfies our minds, as it satisfied the mind of the District Judge, that the contract was, primarily, between the plaintiff individually and the defendant, though it subsequently transpired that Torian agreed to let Montgomery have an interest with him without the knowledge or concurrence of the defendant. Consequently, Montgomery, as well as all the issues and defences predicated on his being a partner, may be omitted from further discussion.
With regard to the disposition made by the District Judge of the other exceptions, we are in accord with the views he expressed.
He was of the opinion that plaintiff had not improperly cumulated inconsistent demands, but that, on the contrary, the demands of the petition were of such character as the law favors the consolidation .
He also held that the allegations of the petition are not vague or inconclusive, and sustained the cause of action as well stated.
All other exceptions were relegated to the merits to stand as parts of the answer.
*1507 But, notwithstanding the views that were entertained by the judge a quo with regard to the partnership of Torian & Montgomery, in deciding the exceptions as to the proper parties, he declined to entertain or consider the plaintiff’s demands for the use of teams and utensils, and work done therewith for the defendant, “ because the mules and carts were not his property, but that of the planting partnership of Torian & Montgomery.” This appears, to our minds, inconsistent. If we are not to consider Montgomery as a partner for the purposes of the exceptions, we can not in respect to the answer and the trial of the merits.
On the merits, we find the following facts substantially proved, viz.:
First: That the plaintiff made a contract with the defendant to superintend and manage one of his plantations as an overseer, for and during the year 1892, at a salary of fifty dollars per month; and that his services under the contract began on the 16th of January and continued until the 2d of December, at which date the defendant consented that he should leave. He was, consequently, entitled to receive ten and one-half months’ wages, equal to five hundred and twenty-five dollars, the exact amount claimed on that score.
This is admitted in defendant’s answer and brief, with the qualification, however, that he had paid him in April, 1892, the sum of ninety-nine dollars and se\enty-five cents in the value of seed rice.
But, as there is no special agreement between the parties that this sum should be imputed as a credit on plaintiff’s wages as overseer, and as he placed same to the defendant’s credit on his general account, we prefer to treat this item under a different head, and hold the defendant for the entire sum, as an item of debit on the account as stated, no part of said wages having been otherwise paid.
Second: That the plaintiff and defendant entered into an agreement under which the plaintiff was to cultivate one hundred acres of defendant’s land in rice, during the year 1892, on shares, the defendant to receive one-third of the crop of rice produced, and to pay the expense of harvesting, threshing and hauling same, and the plaintiff to receive the other two-thirds, and to do all the work and pay all expenses other than those enumerated. Or, in other words, Weeks was to furnish the land, seed rice and machinery — such as reapers, binders and threshers, and to pay for one-third of the harvesting expenses, and furnish his own sacks, and sack his one-third *1508 of the rice; and Torian was to be at all other expense and labor in the cultivation and manufacture of the crop.
Subsequent to the perfection of this agreement the plaintiff, Torian, made an agreement with Montgomery to take an interest with him in this rice crop adventure, but, as we have already stated, without the knowledge of the defendant, Weeks. Hence the original contract was unaffected by the arrangement between Torian and Montgomery, and the only interest that the defendant had was in realizing his one-third of the rice.
Under this agreement the land was cultivated and the yield of rice amounted to two thousand and eighty-five sacks, entitling the plaintiff to receive one thousand three hundred and ninety and the defendant to receive six hundred and ninety-five — the contract between Torian and Montgomery being that they were to share equally. This is shown by testimony of three or four witnesses. The testimony further shows that the plaintiff shipped three hundred sacks of this rice to G. W. Sentell & Go., of New Orleans, and one thousand and seventy-two to Flower & King, likewise of New Orleans, and that the remaining eighteen sacks were retained on the plantation. This was the share of the plaintiff, Torian. Of the. three hundred sacks he and Montgomery received the proceeds and defendant received the remainder; though he has not paid same over to the plaintiff, nor rendered him any account thereof. This was admitted by Weeks on the witness stand.
From the foregoing it is clear that the defendant is liable to the plaintiff for the market value of one thousand and ninety sacks of rice on a settlement of accounts.
It is in proof that this crop of rice was harvested during the months of September and October, and was shipped during the latter part of October and the early part of November of 1892. The three hundred sacks that were shipped to Sentell & Oo. were sold in October, and the proceeds thereof received by the plaintiff, and the account sales show thatsame was sold at prices ranging from $2.40 per sack to $2.75. This is the price plaintiff demands; though the position the defendant assumes is that the rice that is in the hands of Flower & King has not been disposed of, and that he can not be compelled to make a settlement until sales are made, and that he will only be liable to the repetition of the amount actually received. Our opinion is that the plaintiff is entitled to the value of the rice at the time it went to *1509 market, and might have been sold, particularly in view of the fact that the plaintiff’s instructions to Flower &King were to sell at that time.
We note the contention of the plaintiff’s counsel to the effect that a saelc of rice contains one and a quarter barrels, and upon that estimate he is entitled to compensation for one thousand three hundred and forty barrels, as the contents of one thousand and ninety sacks. But we aré not disposed to adopt that basis of calculation, inasmuch as all the transactions of the parties have been predicated upon sacks, and not upon barrels of rice.
Taking a mean between the two extremes, we find two dollars and fifty-seven and one-half cents per sack to be about the correct figure; and at that price one thousand and ninety-two sacks would be worth two thousand eight hundred and eleven dollars and ninety cents.
This amount the defendant has not paid to the plaintiff nor accounted therefor; and he is, therefore, responsible to him for that sum on settlement of accounts, less the approximate charges and expenses of shipping and selling the one thousand and ninety sacks of rice, which may be safely fixed at seven hundred dollars — thus placing the net proceeds of plaintiff’s crop at two thousand one hundred and eleven dollars and ninety cents.
In this estimate we have placed the value of five dollars per sack on the eighteen sacks of seed rice which plaintiff left on defendant’s place, making ninety dollars in all; and in so doing we thought it a just estimate, as defendant had charged the plaintiff ninety-nine dollars and seventy-five cents for fifteen sacks of seed rice furnished him in April previous.
Third: The claim for supplies and labor furnished may be properly and conveniently divided into three items, as the plaintiff’s counsel have divided it in their brief, as follows, viz.:
(a) Cash paid to laborers on defendant’s plantation, sevep hundred and seventy-six dollars and fifty-five cents.
(5) Amount for ploughing, hauling and use of teams, six hundred and eight dollars'and thirty-five cents.
(c) Amount expended in moving crops and board of hands, etc., three hundred and eleven dollars and eighteen and one-half cents, the three items aggregating one thousand six hundred and ninety-six dollars eight and one-half cents.
(a) With regard to the cash paid laborers, the plaintiff, as a wit *1510 ness, states — making reference to the items of his account — that in June, 1892, he paid out forty-six dollars, which he had realized from the sale of cattle. That “the amount paid was for the benefit of Mr. Weeks — paying his hands for working his place; the portion (plaintiff) was managing — i. e., his individual crop.” That in July he expended, from the same source and for like purposes, thirty-four dollars and sixty cents for the defendant’s account. That in September he expended in the same manner two bundx-ed and xxine dollars; and in October one-hundred and twenty-eight dollars and twenty cents; and in November three hundred and thirty-nine dollars and thirty-five cents. He says that he raised these amouxxts principally from the discount of his drafts on Sentell & Co., to whom he had shipped three hundred sacks of rice.
This accounts for all the items on his account except one of twenty dollars, which he explains by pointing out a credit on his account of fourteen dollars in favor of the plaintiff, and thus entitling him to this item also.
The defendant, as a witness, as well as in his answer, disavows all authority for or knowledge of these traxxsactioxxs; but the statement of the plaintiff is plain and straightforward, and he gives the dates, circumstances and amounts paid.
In addition to these facts, it is in evidexxce that the defendant was absent from the State during the greater part of the time and could have had no personal knowledge of them. If indeed, as it appears, the plaintiff did furnish the laborers on the defendant’s plantation, he ought to be reimbux-sed his outlay; and being the trusted agent and overseer of the plaintiff, it can not be fairly presumed that he did not exercise good judgment in making the expenditures.
But it appears that some of the items are somewhat questionable, at least to the extent of about two hundred dollars, and, givixxg defendant the benefit of the doubt, we will reduce the total amount of this item to five hundred and fifty-seveix dollars and fifteen cents.
(6) With regard to the item for ploughing, hauling, use of teams, etc., the plaintiff points out the various items on his account, making the aggregate sum claimed, and states that the first two items of nine dollars and seven dollars and fifty eexxts were for hauling lumber for,the building iix which he lived on the plantation he was overseering for the defendant. The next item of ten dollars was for ploughing land on the same place, with witness’ own teams, in March *1511 of that year. The next item of twenty-one dollars is for six days’ harrowing on defendant’s place with witness’ own mules. And so, through the entire account, he identifies and explains each and every item that is charged against the defendant.
Not only is this the positive statement of the plaintiff, but it is supported by the testimony of at least four apparently disinterested witnesses, who are equally as emphatic and uncontradicted. And several witnesses state that the prices charged are customary and reasonable.
There are two or three items, about the amount of which there is some doubt, and we think it but fair to make a reduction of one hundred and thirty -five dollars, making the total amount due plaintiff on this score four hundred and seventy-three dollars and thirty-five cents.
(e) With regard to the amount expended by the plaintiff in saving crops of the defendant, and in board of laborers, the plaintiff, as witness, states that he paid the entire expense of harvesting the crop which was cultivated on shares, and that the defendant’s portion thereof was two hundred and thirty-five dollars and seventy-eight cents, as stated-in his account; and, under the contract, the defendant was responsible for that expense. By “ saving ” the crop witness states that he meant cultivating, threshing and harvesting the crop of rice, and hauling the sacks of rice to the depot for shipment.. He furnishes the names of the defendant’s laborers whom he boarded, and for which he makes a charge in his account of seventy-six dollars, and states that he boarded them at different times during the year, and furnished the provisions to feed them. That they were carpenters, engineers and field hands. That he furnished and paid the board of the hands — charging only twenty-five cents per day. He is supported in his testimony by Montgomery, who says that he lived in the house with Torian, and was cognizant of the facts detailed by Torian, and the charges made are legitimate. The next item is for the value of a cooking stove and utensils which he purchased and expended twenty dollars for it. That it was left in defendant’s possession, and he has refused to surrender it upon demand. The stove and other articles are worth twenty dollars.
It is equally well established that the plaintiff paid Foster & Broussard nineteen dollars and forty cents for account of the defendant. *1512 But inasmuch as the plaintiff had the use of the stove and cooking utensils for one year, we are of the opinion that ten dollars would be enough for them.
This claim should then be placed at three hundred and twenty-one-dollars and seventy-eight cents. The three items — a b and c — will aggregate then the sum of thirteen hundred and fifty-two dollars and twenty-eight cents instead of sixteen hundred and ninety-six. dollars and ten and a half cents, as claimed in the plaintiff’s petition. Consequently, we have this statement of plaintiff’s demands, as established by the evidence, viz.:
1. Overseer’s wages........................................................................ $523 00
2. Proceeds of plamtifl’s two-thirds interest in crop.................... 2,111 90
3. Expenditures, expense of labor, utensils, etc........................... 1,352 28
Aggregating the sum of three thousand nine hundred and eighty-nine dollars and eighteen cents ($8989.18), which is subject to credits admitted on the face of plaintiff’s account, aggregating two thousand and eighty-three dollars and eighty-one cents, leaving a net balance in plaintiff’s favor of one thousand nine hundred and five dollars and thirty-seven cents.
This brings ns to the consideration of defendant’s reconventional demand for the sum of four thousand and forty-seven dollars- and seventy-four cents for supplies furnished the plaintiff to enable him to make the crop which was cultivated on shares, including money advanced.
At the outstart plaintiff’s counsel'attract our attention to the fact that, notwithstanding the defendant in his answer formally admits the truth and correctness of the items of credit which are given him on plaintiff’s account — and which aggregate in amount two thousand and eighty-three dollars and eighty-one cents — he claims judgment againt the plaintiff on his reconventional demand for identically the same items of credit again. And our examination and comparison of the two accounts fully verifies the correctness of this statement.
For instance, we find in the defendant’s account, on which his re-conventional demand is predicated, the following entries, viz.:
In March, cash..................................................................................... $28 45
In April, cash.................................................................................... 25 26
In May, cash ....................................................................................... 27 10
In May, one beef.............................................................................. 15 no
In June, cash................................................................................... 16 00
In Juno, feed for stock....................................................................... 28 01)
In August, cash.................................................................................. 14 00
III Scpi-eiiibcr, cash............................................................................. 27 80
In October, for rice sacks..................................................................... 125 00
Twine .................................................................................................. 56 90
*1513 Cash, October..................................................................................... 142 00
Supplies furnished Dreyfous ......................................................... 365 25
Threshing 1390 sacks of rice.....i*......................................................... 139 30
Draft cashier ........................................................................................ 450 00
Draft cashed (April)........................................................................ 131 65
Draft cashed................................................................................... 260 00
Eighteen head of cattle (sold during year)............................................ 142 00
These amounts aggregate one thousand nine hundred and ninety-three dollars — only a few dollars less than the amount of credits admitted on plaintiff’s account, and of similar amounts and dates.
And a further examination and comparison made of the two accounts will show that the difference between them in favor of the defendant is thus made up, viz.: By charging in the month of March amounts in cash paid aggregating thirty-one dollars and sixty cents, in addition to the charge of twenty-eight dollars and forty-five cents above specified for that month. By charging cash items in April of two hundred and sixty-four dollars and ninety-two cents, in addition to the charge of twenty-five dollars and twenty-five cents, specified for that month; and including the item of one hundred and thirty-one dollars and sixty-five cents for a draft cashed in April, already charged in his account as above specified. By charging in May cash items aggregating eighty-three dollars and seventy-five cents, in addition to the charge of twenty-seven dollars and foyty cents and fifteen dollars specified for that month. By charging in June cash items aggregating ninety-three- dollars and ten cents, in addition to the items of sixteen dollars and twenty-eight dollars which Are specified for that month.
These are manifestly double charges, and they aggregate in amount five hundred and fifteen dollars and seventy-seven cents, and this amount should be deducted, as well as the sum of one thousand nine hundred and ninety-three dollars, as above specified, as double entries or duplicate charges.
The two sums aggregate in amount two thousand five hundred and eight dollars And 'seventy -seven cents.
Eliminating all of the foregoing duplicate charges from the defendant’s account, and we; have for examination the following remaining charges, viz.:
To one cart.......................................................................................... $90 00
Mules................................................................................................. 1,080 00
In August, cash................................................................................ 9 60
In October, cash............................................................................... 10 00
On November 14, repairs, etc............................................................. 14 00
November M, cash paid.................................................................. 150 00
Cash from P. S. Towles .................................................................... 20 00
Sacks of twine (October).................................................................. 119 21
Six beeves............................................................................................ 75 00>
*1514 These amounts aggregate the sum of one thousand five hundred and sixty-seven dollars and eighty-one cents. Taking up these items in the reverse order we find the following to be the facts exhibited by the record, viz.:
1. As to the six beeves, for which a charge of seventy-five dollars is made, it seems quite apparent that they are included in the general item of “ eighteen head of cattle sold during the year,” and for which a charge is made of one hundred and forty-two dollars. This item must be disallowed.
2. The six (6) preceding items are somewhat involved in doubt.
We are not advised of the true significance of the term “ sacks of twine,” and we can not appreciate the necessity for the use of one hundred and nineteen dollars and twenty-one cents worth of twine, in view of the fact that the plaintiff is previously charged with fifty-six dollars and ninety cents for twine in October.
But we will give the defendant the benefit of the doubt — though not entitled to it in law, nor in equity — and allow him the full amount of these items aggregating three hundred and twenty-two dollars and eighty-one cents.
The only two items remaining for our consideration are those for the cart and mules, and also the item for seed rice furnished the plaintiff in April of nine-nine dollars and seventy-five cents — previously adverted to.
This last item is admitted in plaintiff’s account to be correct, and defendant is credited with that amount, and consequently he is also entitled to this additional allowance on his reconventional demand.
With regard to the item of one thousand and eighty dollars for mules, it will appear from the record that a note was executed for that sum in February, 1892, in favor of A. B. Murray, representing the purchase price of six mules and signed by Torian, Montgomery and the defendant. That suit was brought on said note against all the parties and same is still pending — Murray having assigned his rights to G. L. Hall, who is the attorney for the defendant in this suit. The defendant has paid no part of said note for the price of the mules beyond the sum of two hundred and fifty dollars — his claim in his answer to the suit of Murray being that he is a simple endorser on the note, and that he has been discharged by reason of the principal debtors, or makers having been granted an extension of time. It does not make any difference, in so far as this case is *1515 concerned, as to what the outcome of that case may be, as it is quite evident that the defendant, Weeks, is not entitled to credit with the plaintiff for an amount in excess of the two hundred and fifty dollars he is shown to have actually paid. Non constat that the defendant will ever pay, even if the plaintiff does not.
The same is true in regard to the ninety dollars that is claimed as the price of the cart. The evidence disclosed that a similar note was furnished in this instance, and that no part of the same had been paid.
Hence the only items on the account of the defendant to which he is entitled to credit are the following, viz.:
1. The aggregate of the six items preceding the last above enumerated, amounting to three hundred and twenty-two dollars and eighty-one cents.
2. The item for seed rice, ninety-nine dollars and seventy-five cents.
3. The cash paid on note for mules, two hundred and fifty dollars.
The whole amounting to the sum of six hundred and seventy-two dollars and fifty-six cents.
We however note the contention of plaintiff’s counsel with regard to the item of one hundred and fifty dollars cash paid on November 14, and the explanation given of it by the plaintiff, and which is to the effect that Towles brought down to the plaintiff one hundred and ten dollars in cash and an order on Papet for forty dollars. That he collected on the order only thirty-two dollars, and he consequently gave the defendant credit for the one hundred and ten dollars and the thirty-two dollars collected, the two amounts aggregating one hundred and forty-two dollars, which amount is specified on the plaintiff’s account as a debit against himself, thus, viz.:
“ October — By cash, one hundred and forty-two dollars; ” and on the defendant’s account it is specified as a charge against the plaintiff, thus, viz.: “Cash, one hundred and forty-two dollars.”
The effect of this explanation is to show that this item of one hundred and forty-two dollars is identically the same as the previous item, “November 14, 1892, cash paid, one hundred and fifty dollars.”
The statement of the plaintiff is fully corroborated by the testimony of Towles. Therefore, on a more careful inspection of the evidence we have become satisfied that the item of one hundred and fifty dollars is an erroneous, or double entry, and should be de *1516 ducted from the amount previously allowed, thereby reducing the amount to which the defendant is entitled to five hundred and twenty-two dollars and fifty-six cents.
Deducting this sum from the amount of one thousand nine hundred and five dollars and thirty-seven cents that is awarded the plaintiff on his demands, and there will remain a net balance due the plaintiff of thirteen hundred and eighty-two dollars and seventy-one cents, for which he is entitled to judgment.
We have examined this voluminous transcript, and the elaborate briefs of counsel on either side, with great deliberation and care, and arise from a study of the case with a clear conviction that the judgment appealed from should be amended and increased in plaintiff’s favor, so as to award him the full sum specified, and so as to reject and disallow the defendant’s reconventional demand in toto, except as above specified.
It is therefore ordered, adjudged and decreed that the judgment appealed from be so amended and increased as to entitle plaintiff to have and recover of and from the defendant the sum of thirteen hundred and eighty-two dollars and seventy-one cents over and above the amount awarded the defendant on his reconventional demand; and so as to reject and disallow the defendant’s reconventional demand in all other respects, the defendant and appellee to pay all costs of both courts.