(49 South. 603.)

No. 17,422.

LEJEUNE v. VAUFREY SUGAR PLANTING & MFG. CO., Limited.

(May 10, 1909. On Rehearing, June 7, 1909.)

PARTNERSHIP (§ 199*)—ACTIONS—PARTIES.

Where plaintiff leased from defendant two plantation stores for the purpose of selling supplies to laborers, with the right of handling the pay rolls, and paying himself out of the money due for wages, and then entered into a partnership with a third person for the purpose of conducting the business in one of the stores, and thereafter the defendant breached the agreement by withholding the pay rolls and money thereon, *held*, that as against the defendant, who had ignored the existence of the partnership and attempted to hold plaintiff alone responsible for its acts, the plaintiff had standing to recover damages sustained by himself and the partnership by reason of defendant's violation of the contract. Torian v. Weeks, 46 La. Ann. 1502, 16 South. 405, reaffirmed.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 369–371; Dec. Dig. § 199.*]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by Zenon Lejeune against the Vaufrey Sugar Planting & Manufacturing Company, Limited. Judgment for plaintiff, and defendant appeals. Amended and affirmed.

Foster, Milling & Godchaux and Alexis Brian, for appellant. Clegg, Quintero & Gidiere and Anthony N. Muller, for appellee.

LAND, J. Plaintiff sued for a large amount of damages for the alleged breach of a written contract as follows, to wit:

"A two year contract at $50.00 a month for the year 1905, and at $60.00 per month for the year 1906, and with privilege of three years more from January 1, 1907.

"The pay roll of both Vaufrey and Providence plantations to be handed Z. Lejeune, accompanied with a check for the amount thereof.

"Said Lejeune to do the paying off and having the full authority to collect therefrom such amount as each laborer or person named in said pay roll may owe said Lejeune; the said Lejeune binding himself to retain any and all amounts due to plantations or C. L. Monnot, should said laborers have any amount left over and above his (Lejeune's) collections. It is understood that all facilities will be extended said Lejeune on the Vaufrey plantation in the matter of a storeroom free of rent, or he may at his will cause one to be built on the place at his own cost, in which case privilege of removing the same at the expiration of the lease to be and is reserved unto said Lejeune.

"In the matter of time of employés and laborers employed on said Providence plantation and Vaufrey plantation the same shall be furnished said Lejeune as often as he may need it for the proper guidance in his business. In the event that either of the above plantation or plantations should require the securing of labor, and advance said labor money for removal on said plantation or plantations, then said plantation or plantations shall furnish the money and charge the same to said Lejeune, and, in the event that said laborer or laborers should leave or be discharged before the amount due is liquidated, then the amount of said advance due Lejeune shall be equally divided between said plantation and plantations and said Lejeune."

This contract is not dated, but was signed on April 12, 1905, by defendant company through C. L. Monnot, president, and by Z. Lejeune.

Both plantations belonged to the defendant company, and on the Providence place was a storehouse containing a stock of merchandise belonging to C. L. Monnot. Lejeune was a country merchant who desired to lease said storehouse, and also to acquire the privilege of opening and conducting another store on the Vaufrey plantation. The first paragraph of the written contract sets forth the price and terms of the lease. It was understood that the store or stores would supply the laborers on the two plantations who worked for wages payable at the end of every two weeks. In order to secure Lejeune in his advances to the laborers, the contract constituted him the agent of the defendant for the purpose of handling and paying out the money due to laborers and other persons named in the pay rolls, with the right to collect and retain whatever amount might be due him. At the same time Lejeune was to collect for the defendant company and C. L. Monnot if anything was left after the satisfaction of his own claims. The last paragraph bound Lejeune to advance all money found necessary to secure and move laborers on the plantation and to become personally responsible for one-half of the loss, if any, resulting from the nonreimbursement of such advances by the laborers.

On the execution of the contract, Lejeune purchased the stock of merchandise on the Providence plantation at the price of $850, took in C. Le Bauve as a partner, and the firm thereafter carried on a mercantile business in the storehouse on said plantation. Lejeune individually conducted a general country store in the town of Jeanerette near the Vaufrey plantation, and also used the storehouse on the same plantation for the purposes of his business.

At the close of the year 1905, the defendant's president and agents became dissatisfied with the contract or with the manner in which it was performed by Lejeune, and demanded changes which he refused to entertain. After vacillating for six weeks in the matter of turning over the pay rolls and checks to Lejeune, the defendant on or about February 17, 1906, notified him that the contract was at end. Lejeune and Le Bauve under the style of Z. Lejeune & Co. continued to do business on the Providence plantation until January 4, 1907, when they moved the remainder of the stock to Jeanerette. Lejeune did no business on the Vaufrey plantation during the year 1906.

The present suit was filed May 28, 1906, but was not tried until June, 1908. The case was threshed out in the court below, and, after a lengthy trial and patient consideration of the evidence, the judge rendered judgment in favor of the plaintiff for the sum of $1,217.98, with the legal interest from judicial demand and costs of suit. The judge found that, by the refusal of the defendant to deliver the pay rolls and checks, the plaintiff had lost accounts at the two stores aggregating $848.45, and had sustained a loss of $183 in conducting the business after February 10, 1906, and a loss of $185.78 in interest on his investment.

Evidence offered by the defendant to show a prior and contemporaneous parol agreement injecting other conditions into the written contract and giving the defendant the right to declare it annulled by simple notification was properly rejected. A written contract would be worth but little if such evidence were admissible in a court of justice.

At the end of about nine months, the defendant sought to make another contract with the plaintiff abrogating his right to act as agent in the disbursement of money due on pay rolls, and giving him simply the right to be present when the laborers were

paid and an opportunity of collecting the amount due him.

Plaintiff refused to abrogate or change the existing contract. Thereupon defendant withheld the pay rolls and checks during January, 1906, but turned them over on February 10, 1906, and then repudiated the contract altogether.

The allegation that the plaintiff violated the contract by charging exorbitant prices for his goods and by defrauding the laborers in weight, thereby demoralizing the labor on the plantations, is not established by a preponderance of the evidence. There are many painful conflicts of testimony on this issue and a world of hearsay evidence. Some of the laborers were satisfied and others were dissatisfied with their dealings with the plaintiff. The business of selling to plantation laborers goods on a credit involves elements of risk which must be insured against by high prices. In such cases the credit is based on wages to be earned, and, as a general rule, the merchant has no other security. The positive evidence is that plaintiff's credit sales were made on the basis of 35 per cent. above cost, a rate of profit not shown to be exorbitant in such a business. The question of prices was a matter between plaintiff and his customers, and was not covered by the stipulations of the contract. The laborers were paid every two weeks, and the plaintiff did not have a monopoly in selling goods, as there were other stores in the vicinity. The evidence fails to show any such extortion as would justify the annulment of the contract on the ground of the violation of its spirit to the injury of the defendant in the conduct of its planting business. There does not seem to have been any controversy between defendant and the plaintiff as to the prices charged the laborers until the end of the year, and then the vague complaint of defendant on this score was coupled with a demand that plaintiff surrender his contract right to handle and disburse the money called for by the pay rolls. The control of the money appears to have been the main question between the parties.

The only question of law arising in the case is whether the plaintiff can recover for damages sustained by the commercial partnership of Lejeune & Co., composed of Zenon Lejeune and C. Le Bauve. It appears that Lejeune, after making the contract and purchasing the stock of goods on the Providence place, formed a partnership with Le Bauve, and that the firm so formed owned and conducted the business on said plantation from the beginning to the end. Each partner owned a half interest in the concern. Defendant contends that whatever injury was suffered by reason of the violation of the contract was sustained by the partnership and not by Lejeune individually, and that the latter cannot stand in judgment for his firm.

Plaintiff relies on the case of Torian v. Weeks, 46 La. Ann. 1502, 16 South. 405 where a contract relative to the planting a crop on shares was made and entered into by and between the plaintiff and defendant alone, and the former sued to enforce the contract, and it was held that the plaintiff could stand in judgment notwithstanding he had subsequently made an agreement with a third person whereby he was to share his interest; the defendant not being advised of such subsequent agreement and consequently not concurring therein. In that case Torlan was permitted to recover for the use of teams and utensils and work done in the name of the planting partnership of Torian & Montgomery formed after the making of the contract between Torian and Weeks. The case is very similar to the one at bar, where Lejeune, after making his contract with the defendant, entered into a contract of partnership with Le Bauve for the operation of a store on one of the plantations. Le Bauve was no party to the original contract, and no interest therein was assigned to

him or could have been so assigned without the consent of the defendant. Defendant knew all along of the partnership subsequently formed between Lejeune and Le Bauve, but has uniformly treated both the partnership and Le Bauve as strangers to the contract, and both in and out of court has sought to hold Lejeune alone responsible for the acts of Lejeune & Co.

In one of its answers the defendant alleged the occupancy by Lejeune of the store on the Providence plantation during the entire year 1906, and reconvened for its rental value at the rate of $40 per month.

According to defendant's contention, Lejeune & Co. cannot stand in judgment because it is a stranger to the contract, and Lejeune cannot recover because the damages were suffered by the partnership. The just and correct solution of the question is that it does not concern the defendant what agencies Lejeune employed to carry on his mercantile business on the Providence plantation.

Defendant's contention that the plaintiff violated the contract by refusing to pay rent for the month of December, 1905, is without merit. No particular date was fixed for the payment of the rent, and plaintiff was never put in default. The defendant itself violated the contract early in January, 1906, by refusing to turn over the pay rolls and money.

We concur in the conclusion of the trial judge that "defendant breached the contract without just cause, though without malice." The judge, after considering the evidence and examining the books of the plaintiff, found that from January 31, 1906, to January 1, 1907, the gross profit on merchandise amounted to $196.25, that clerk's salary during the same period amounted to $440. On these figures there was a net loss of $243.75. The judge found accounts lost as follows: Providence store $449.15 and Jeanerette store $339.30. The judge charged rent for 11 months $660, and credited rent for one year $720, leaving a net loss of $1,032.20, and to this added $185.78 as interest on the investment.

The data used by the judge in ascertaining the gross profit on merchandise were presumably taken from the books, and his findings are not impeached by counsel for defendant otherwise than by pointing out different figures given by Le Bauve, an inexperienced bookkeeper, while on the witness stand. After the breach of the contract, plaintiff was compelled to do business on a cash basis; hence the smallness of the gross profits. The judge did not, as counsel suggest, arrive at the gross merchandise profit by simply deducting the goods purchased from the total sales, but also considered the two inventories figuring in his statement.

The allowance of the two store accounts as a total loss is strenuously contested. The basis of plaintiff's claim of loss is that the accounts could have been collected if the pay rolls and money had not been withheld. Le Bauve admitted on the stand that $45 of the Providence account was owing by men not working on the plantations. This amount should have been deducted. The contention that $115 of the same account should be rejected because contracted prior to January 1, 1906, is not well founded, as the debtors were still working on the place. Le Bauve testified that a portion of the total amount was due by the plantation. Defendant produced two of the pay rolls which had been withheld, and argues that the right of the plaintiff to recover should be restricted to the amounts to the credit of the laborers thereon. This would be a logical position if the contract had restricted plaintiff's security to the wages due on two pay rolls; but his contract right extended to all the pay rolls for the year 1906.

It is further argued that plaintiff should have minimized his loss by accepting the in-

vitation of the defendant to be present when the laborers were paid. Plaintiff was under no obligation to minimize the loss by acquiescing in the violation of the contract by the defendant.

We find that the trial judge has not given the defendant credit for $50 for rent due for December, 1905, claimed in reconvention.

The amount awarded below should be reduced by the sums of $45 and $50 above mentioned.

It is therefore ordered that the judgment below be amended by reducing the amount from $1,217.98 to $1,122.98, and, as thus amended, be affirmed, defendant to pay costs of appeal.

### On Rehearing.

Our decree herein is amended by ordering that the plaintiff and appellee pay costs of appeal, and with this amendment the application for a rehearing is refused.