RIGAUD v. GARVEY

—

(April 23, 1928. Opinion and Decree.)
(June 18, 1928. Rehearing Refused.)

—

(*Syllabus by the Court*)

1. **Louisiana Digest—Parties—Par. 2, 3, 5; Pleading—Par. 22.**

Where a suit is brought for the use of the real parties in interest by a plaintiff authorized to bring it, and where defendant is not deprived of any of his means of defense and will be protected by the judgment, the action will be maintained notwithstanding that technically the party before the Court may not strictly be the proper plaintiff for the case.

Appeal from Civil District Court. Hon. H. C. Cage, Judge.

Action by Jules Rigaud against Joseph B. Garvey et al.

There was judgment for defendant and plaintiff appealed.

Judgment reversed and case remanded.

Tiche and Tiche, of New Orleans, attorneys for plaintiff, appellant.

F. C. Marx, of New Orleans, attorney for J. B. Garvey, appellee.

J. L. Toler, of New Orleans, attorney for American Surety Co., appellee.

CLAIBORNE, J. This is a suit against the contractor Garvey and his surety and the owner, Oralie Balentine, for materials

and labor furnished to a building. It was filed in January, 1925.

Plaintiff alleged that Garvey contracted with Miss Balentyne, the owner, to construct a duplex dwelling house on Salomon Place; that he, plaintiff, with his son, were employed to do the plastering work under the direction of Garvey, and that he, plaintiff, furnished the material and labor amounting to $579.53 for which he has filed a privilege against the property. He prayed for judgment in solido against Garvey and Miss Balentyne for said amount, and for recognition of his privilege against the property.

Miss Balentyne filed a general denial and further answering averred:

That she admitted her contract with Garvey; that it was written and dated December 14, 1923, and was signed by the American Surety Company, as surety for Garvey, for $7934, and was recorded in the mortgage office, all in accordance with Act 139 of 1922, and was faithfully executed; she admitted that Garvey constructed the building.

After the filing of this answer the plaintiff filed a supplemental petition in which he averred that according to this answer the American Surety Company was liable to him and he therefore prayed for judgment against it for a like amount of $579.53.

The Company answered admitting that it had signed Garvey's bond as surety but denied all the other allegations of the two petitions.

Garvey admitted the contract with Miss Balentyne and that he had constructed the building; but denied that the plaintiff was employed by him to do any work on the building, but admitted that he employed plaintiff's son to do plastering work, and he denied all the other allegations of the petition.

Miss Balentyne then excepted that neither the original nor the supplemental petition disclosed any cause of action against her.

This exception was maintained by judgment rendered April 14, 1925, and plaintiff's suit against her was ordered dismissed. From this judgment plaintiff has not appealed.

On June 30, 1925, there was judgment in favor of the two defendants, Garvey and the surety company.

From this judgment the plaintiff has appealed.

In this Court the plaintiff has admitted that he has no claim against Miss Balentyne, individually, nor against the insurance company. The only claims he urges are one against Garvey, personally, and the other for the privilege of the furnisher of materials and labor upon the property of Miss Balentyne under Articles 2772 et seq. of C. C.

But inasmuch as he makes no allegation and no proof of personal indebtedness by Miss Balentyne to him, and he disclaims any claim against her, and considering the final judgment in favor of Miss Balentyne from which no appeal was taken, the plaintiff could only be entitled to a privilege upon the property built for Mrs. Balentyne if she owed Garvey any portion of the contract price, under Articles C. C. 2772, 2773.

Art. C. C. 2773 reads as follows:

"Workmen and persons furnishing materials, who have contracted with the undertaker, have no action against the owner who has paid him. If the undertaker be

not paid, they may cause the moneys due him to be seized, and they are of right subrogated to his privilege."

Under Art. C. C. 2772 the workmen and furnisher of materials have no privilege in their own right; they have only the same privilege as the contractor has, and if the latter has none, they have none either. There is no allegation and no proof that amount was due the contractor or that he was entitled to a privilege upon the building. Hale vs. Wills et al., 3 La. Ann. 504; Whitla vs. Taylor, 6 La. Ann. 480; Gaydon vs. Justus, 26 La. Ann. 221.

As the plaintiff admits that Act 139 of 1922 grants him no privilege, we are spared the necessity of examining that question.

There remains therefore only one defendant, Joseph B. Garvey, the contractor, or undertaker. Judgment was rendered dismissing plaintiff's demand against him also. The reasons of the learned trial Judge were as follows:

"Garvey denies he ever contracted with Jules Rigaud; he alleges he contracted with his son, Albert, and says he owes Jules Rigaud nothing.
"The first witness placed on the stand by the plaintiff was Albert Rigaud, the son of Jules Rigaud, the plaintiff. Albert swore he and his father were partners and this was a partnership job.
"Jules Rigaud was then placed on the stand and he swore, that while he and his son took contracts as partners, yet at times they did not; but he swore positively that the Ballentine job taken on Solomon Street was a job taken by his son Albert. That testimony absolutely ends the case and makes it useless to go into it any further.
"The defense set up by Garvey is absolutely made out by the testimony of Jules Rigaud, the plaintiff, and it would be futile to carry on the case any further and there must be judgment for the defendant."

In the course of the trial the Judge said:

"If it was a partnership, one partner, two partners, or three partners cannot bring suit in their own name. That is a law so well established that neither you nor I can change it."

The error of the trial Judge was in coming to the conclusion that Jules Rigaud was a partner of his son Albert, in their general business, or in this particular job.

The Civil Code, Article 2805 (2776) says:

"Partnerships must be created by the consent of the parties."

There is absolutely no testimony that they were partners in their general business. They had no partnership name. There was no partnership agreement between them.

Albert had no money, his father put up the money. It is true that Albert testified that he and his father were partners, but his untutored mind did not probably grasp the meaning of the word.

It took a wiser man than him to know what constituted a partnership, about which learned judges have differed. Chaffraix & Agar vs. Price, Hine & Tupper, 29 La. Ann. 176.

He said that his father bore all the losses. Societas leonina; C. C. 2814 (2785). Obligation to pay losses is essential to a partnership. He signs all the contracts he gets "Albert Rigaud," and his father signs "Jules Rigaud." There was no agreement between them.

Jules Rigaud testified that he worked with his son on some jobs, not on all jobs; on some jobs he gets paid by the day; he takes jobs independently of his son; his son takes jobs with which he has nothing to do; on this job for Garvey his son got so much a week while the

work was going on; he paid him; his son did not give him anything for his losses on this building; he pays his son $10 a day; he has no agreement with his son; at times, on some jobs, he and his son work as partners; they did not work as partners on the Solomon job; it was his son's job; at times his son takes jobs with which he has nothing to do, and vice versa; the Solomon job under discussion was Albert's job, all he did was to furnish his son with the material and labor; it was Albert's job more than his; when Saturday came and there was no money to draw, he had to furnish the money to his son; it was his son's job, because he worked for Garvey all the time.

At this juncture the Court remarked: "To use the vernacular of the street, Mr. Tiche, it looks like you are blown up. He says it was Albert's job."

Mr. Tiche: "Suppose it was and this man (Jules) furnished the labor and material?

The Court: "He furnished it to a sub-contractor (Albert Rigaud). Garvey is the contractor.

Mr. Tiche: "Well he has a lien against the house.

The Court: "No, he has not. He furnished it to a sub-contractor."

The case ended there, and judgment was promptly rendered against the plaintiff.

On the theory that Albert was the subcontractor under Garvey, this conclusion was perhaps correct. But if it is true that Albert and Jules were partners then the judgment was eminently wrong. For in that case, Albert and Jules were subcontractors and furnishers of materials and labor to Garvey directly and had a

right of action undoubtedly directly against him. But it is evident that the trial Judge decided the case on the theory that Albert and Jules were not partners but third persons to each other.

Garvey denied that he employed the plaintiff (Jules Rigaud) to do any work on the building, but admitted that he employed plaintiff's son, Albert, to do plastering work in said building.

But there is no testimony that the plaintiff and his son were general partners. The only testimony is that it sometimes happens that they take contracts together as partners.

Jules Rigaud then pays his son Albert regular wages, and if the job yields any profit, he allows him a certain proportion thereof as a further compensation for his services.

In the elaborately argued case of Chaffraix and Agar vs. Price, Hine and Tupper, 29 La. Ann. 176, the Court in an opinion covering eighteen pages decided that:

"Where a party shares in the profits of a partnership, not as a principal but as an agent, or employee who receives a certain proportion of the profits in compensation of his services, he is not a partner."

Affirmed in Chaffraix and Agar vs. Lafitte, 30 La. Ann. 631; Miller vs. Chandler, 29 La. Ann. 88.

But in the case before us, the testimony of plaintiff is that he was not a partner of his son in the construction of this building, and the sworn allegation of Garvey in his answer is that he employed plaintiff's son and denied that plaintiff was employed by him. "Non in hac cfoedera veni." If Jules and Albert were not general partners, then it follows, as day follows night, that Garvey made no contract with Albert and Jules, but with Albert

alone. Whatever arrangements were subsequently made between Albert and Jules are no concern of Garvey and cannot affect him in any manner.

Giving the case of Wolf et al. vs. N. O. Tailor Pants Co., 52 La. Ann. 1357, 27 So. 893, all the authority to which it is entitled it may be differentiated. In that case the plaintiffs, as members of the firm of Wolf and Sons prayed for judgment in their favor individually, against the defendants whom they charged with having enticed away from their employ a valuable clerk.

The obligation, if any, arose during the partnership and was sued upon during its existence. Here the contract was made before the partnership was found and consequently not with the partners, and the suit was brought, if partnership there was, after its dissolution. Therefore in the last case the suit may not be brought in the name of a partnership which no longer exists, but must be brought in the name of all the partners. State vs. Judge of 2nd Dist. Court, 13 La. 484.

Therefore if this suit had been brought in the two names of Albert and Jules Rigaud the Wolfe case would not have been applicable.

The only question remaining therefore is, was this suit properly brought in the name of Jules Rigaud? It must be admitted that it would have been more properly brought in the name of Albert Rigaud, inasmuch as the contract was made with him. But it must also be admitted that from the evidence Jules Rigaud is more pecuniarily interested in the claim made in that suit than is Albert Rigaud, and that from the testimony of Albert Rigaud, he has ratified and approved the filing of this claim in the name of his father,

Jules. At any rate we do not agree that the drastic judgment in this case should be the penalty for filing the suit in the wrong name. It has been repeatedly held that where the real creditor authorizes another to appear as plaintiff to recover a claim which belongs to him, the judgment is binding upon him, and the debtor has no interest in knowing to whose benefit the judgment will accrue when rendered. Cade et al. vs. Redditt, 15 La. Ann. 492; Lapice vs. Lapice, 21 La. Ann. 226; Holzob vs. N. O. & Carrollton R. R. Co., et al., 38 La. Ann. 185; Lewis et al vs. Holmes, 109 La. 1035, 34 So. 66; Marqueze & Co. vs. Fernandez & Co., 30 La. Ann. 200; Malmore vs. Martinez, 144 La. 96, 80 So. 212.

The same rule should apply when the real party in interest testified in favor of the plaintiff.

In the case of Shaw vs. Thompson, 3 N. S. 392, the Court said:

"The suit appears to have been brought by the persons having the legal interest in the instrument sued on. Whether they were the owners or not, was a matter with which the defendant had nothing to do, as the judgment here formed res judicata against any other who might hereafter have claimed an interest in it."

In Humphreys vs. Cousin, 7997 Ct. App. April 18, 1921, O. Bk. 57, the syllabus, made by the Court reads as follows:

"Where suit is brought for the use of the real parties in interest by a plaintiff duly authorized to bring it, and where the defendant is not deprived of any of his means of defense and will be protected by the judgment, the action will be maintained notwithstanding that technically the party before the Court may not be strictly the proper plaintiff in the case," quoting 8 Orl. App. 48; Lejeune vs. Vanfrey Sugar Planting & Mfg. Co., 123 La. 871, 49 So. 603; Hanton, et al. vs. N. O. & C. R. Light & Power Co., 124 La. 562, 50 So. 544;

Smith vs. Atlas Steam Cordage Co., 41 La. Ann. 1, 5 So. 413; Keer et al. vs. Evershed et al., 41 La. Ann. 18, 6 So. 566; Strauss vs. Bloom & Co., 18 La. Ann. 48.

In Smith vs. Atlas Steam Cordage Co., 41 La. Ann. —, 5 So. 413, the Court said:

"A suit brought by one in his individual name, but in reality for the benefit of non-residents as owners of the claim sued on must be viewed as instituted by the constituents themselves who must be considered as the real plaintiffs in court."

In the case of Torian vs. Weeks, 46 La. Ann. 1502, 16 So. 405, the plaintiff made a planting partnership with the defendant and subsequently agreed with a third party to share his interest. Held the plaintiff could sue for the enforcement of the contract in his own name, the defendant not being a party to the subsequent agreement.

This decision was approved in Lejeune vs. Vanfrey, 123 La. 871, where after his lease with defendant plaintiff formed a partnership with another, it was held that Lejeune alone could sue defendant for the violation of the lease. "The just and correct solution of the question is that it does not concern the defendant what agencies Lejeune employed to carry on his mercantile business on the Providence Plantation."

The case of Tripo Colovich vs. National Fish Co., 8 Ct. App. 47, is identically the same as the case before us. In that case Tripo Colovich was the master and half owner with his brother Costo Colovich and Frank Sanbat; the three manned the boat and fished oysters which they sold and divided the proceeds between them; the business was transacted by Tripo Colovich in the name of "Schooner Mary K." The plaintiff sold oysters to the defendant who failed to pay for them. This suit was filed against him by "Tripo Colovich, master and owner of the Schooner Mary K., praying for judgment in favor of himself individually." The defendant answered that "it was not indebted to Tripo Colovich, individually, in any sum whatever, but that the oysters were purchased from a partnership which at the time was operating the Schooner Mary K." Thereupon the plaintiff filed an amended petition in which he alleged that his suit was authorized by all parties in interest, and he concluded by a prayer for a judgment in favor of himself "as master of the Schooner Mary K." The judgment in favor of the plaintiff was affirmed on the authority of many cases quoted in the opinion. In conclusion the Court said:

"The general doctrine which we gather from these cases is that where a suit is brought for the use of the real parties in interest by a plaintiff duly authorized to bring it, and where the defendant is not deprived of any of his means of defense and will be protected by the judgment, the action will be maintained notwithstanding that technically the party before the Court may not be strictly the proper plaintiff in the case."

The Court refers to the Wolf case and differentiates it; it refers to it as highly technical, so recognized, by its author himself who said:

"We regret having to dismiss a suit brought on behalf of a partnership in a manner which has been so often acquiesced in."

A writ of review to the Supreme Court was denied from the opinion in the Colovich case.

But a more liberal view than in the Wolfe case was subsequently taken by our Supreme Court in the case of Lejeune vs. Vanfrey, 123 La. 871, 49 So. 603, and Torian vs. Weeks, 46 La. Ann. 1502, 16 So. 405, cited in the latter case and quoted by us above.

We shall follow the Colovich case carrying with it the exequatus of the Supreme Court and better calculated to assist the maxim of the civil law: "honeste vivere, neminem nocere, et suum cuique tribuere."

It is therefore ordered that the judgment appealed from in favor of Joseph B. Garvey be reversed and set aside; and it is now ordered that this case as to him be remanded for trial upon the merits with leave to the plaintiff to file a supplemental petition making Albert Rigaud a party defendant, and to allege therein that his original petition was filed with the consent of his son, Albert Rigaud; the defendant Garvey to pay the costs of appeal and the costs of the District Court to await the final determination of this suit.

Judgment reversed and case remanded.