Statement of the Case.
NICI-IOLLS, J.
Plaintiffs, the widow and children of Nicholas Burke, allege that the New Orleans & Carrollton Railroad, Light & Power Company is justly indebted unto petitioners in the full sum of $26,785.53, legal interest from judicial demand untii paid, for this, to wit:
“That your petitioners are, and were on the 18th day of February, 1907, the owners of the real estate and improvements described by the municipal number of 5809 St. Charles avenue, at the entrance of what is known as Rosa Park, in this city; that the improvements of said property consisted of a two-story frame building and attic, with appurtenances, which premises are used as a residence by all of your petitioners, except the said William P. Burke. That the New Orleans, & Carrollton Railroad, Light & Power Company is, and was on the 18th day of February, 1907, engaged in furnishing electric power for lighting and other purposes in this city; that on said date, and for a long time prior thereto, said company was furnishing and did furnish electric power for the lighting of petitioners’ aforesaid premises; that said premises were properly wired, and were installed with all proper customary and usual electric appliances and devices for the lighting thereof by electricity, in accordance with the rules and regulations governing such matters; and that the electric current for lighting purposes was carried in said premises by service wires connected with the said company’s main line of wires, which ran along the river side of the neutr.al grounds of St. Charles avenue.
' “That on the 18th day of February, 1907, and in the forenoon thereof, the said New Orleans & Carrollton Railroad, Light & Power Company, its agents and employés, were engaged in removing an old decayed pole supporting its main line of wires running along the neutral grounds on St. Charles avenue, in front of petitioners’ premises, and in replacing said old pole by and with a new pole to support said wires, and that, in changing and substituting said poles, the said company, its agents, and employés, cut and unfastened from its said main line of wires the service wires which carried electric current from said main line unto the aforesaid residence of petitioners; that, while engaged in said work, the said company, its agents and employés, carelessly and negligently permitted the service wires hereinabove referred to, which led into petitioners’ residence, to come into contact with a wire or wires carrying electric current of a greater and higher pressure than the wires and electrical fixtures in the said premises were designed to and could carry.
“That, in consequence of said service wires leading to petitioners’ said premises being permitted to come into contact with a wire or wires carrying a greater and higher pressure 'than the electrical service in said premises was designed to and could carry, an electric current of greater pressure was carried into said premises, with the result that the insulation, fixtures, and appliances of said premises broke down, arching was established in said wires, fixtures, and appliances, and said premises caught and were thereby set on fire.
“That said fire spread rapidly throughout said building, and was not extinguished until said building had been almost totally destroyed. That the damage to said building, resulting from said fire, was and is the sum of $16,831.
“That there were contained in said premises, at the time of said fire, certain household articles and furnishings, ornaments, etc., more particularly itemized on the statement hereto annexed and made part hereof, and marked ‘Exhibit A,’ which articles were and are valued at the sum of $8,800.30, and that said articles were completely destroyed by and in said fire.
“That certain other articles contained in said building at the time of said fire, and appearing on the itemized statement hereto annexed and made part hereof and marked ‘Exhibit B,’ were damaged in and by said fire to the extent of $1,154.23.
“That petitioners were the owners, either separately or together, of all of said movable property contained in said premises and destroyed or damaged by said fire, and that petitioners have transferred and assigned to each other, and are now the owners of all claims, demands, and cause of action which they and each of them have or had against the defendant company, or any other person or corporation, for the damage by them, or each of them, sustained in consequence of the destruction and damage to said movable property hereinabove *565 described, as will more fully appear by reference to the assignment which is hereto annexed and made part hereof.
“That the cause of said fire was, immediately after its occurrence, examined into by the fire marshal of this city, charged by law with duty, and that said fire marshal found, upon concluding said investigation, that said fire was caused and originated as hereinabove stated.
“In view of the premises, petitioners pray that said New Orleans & Oarrollton Railroad, Light & Power Company be cited; that there be judgment in favor of petitioners and against the said New Orleans & Oarrollton Railroad, Light & Power Company in the sum of $26,-785.53, with legal interest from judicial demand, and costs of suit.”
On February 17, 1908, defendant, with leave of court, answered and filed an amended and supplemental answer. It reiterated its original answer, save as might thereafter be admitted. Further answering, defendant averred that, if the damages alleged were caused by the acts attributed to defendant in the petition (which acts and alleged results are denied), in that event damages were contributed to by the negligence of plaintiffs in having the wiring and fixtures in the house in bad condition, without which negligence none of the damages alleged could have resulted from any of the acts charged against defendant.
This case came up for trial February 17, 1908, and on February 19, 1908, defendant’s counsel, in open court and in presence of the counsel for plaintiffs, suggesting to the court that at the last hearing testimony was offered on behalf of plaintiffs to the effect that plaintiffs had, prior to institution of this suit, parted with and disposed of a portion of their interest in their alleged claims against the defendant, and further suggesting that said testimony so offered modified the petition in this cause to that extent, that the plaintiffs do not claim and are not seeking to recover for themselves and on their own behalf, as alleged in the petition, the entire amount of claim; and defendant, further stating, in order that its position might be clear, that it will, on its request for charges and elsewhere, whenever may be proper, insist that said modification, while reducing the claim of any of plaintiffs, to the amount of which they have not divested themselves, nor disposed of, yet will not enable said plaintiffs, under the pleadings in this cause, to recover any amount on behalf of any other person, firm, or corporation, and that no other person, firm, or corporation can recover anything in this suit through plaintiffs or otherwise, now moves the court to direct the plaintiffs to declare what amount, if any, they are seeking to recover for themselves and their own interest against this defendant in this suit. This motion was refused by the court.
On February 19, 1908, defendant, without waiving or modifying its pleadings or objections, claimed that the effect of plaintiffs’ testimony described in defendant’s motion made this day, and the effect of the proceedings had upon that motion, was to introduce certain insurance companies named in plaintiffs’ return to said motion as new parties plaintiff; and defendant accordingly pleaded the exception of misjoinder of parties plaintiff between the original plaintiffs and said companies.
Defendant prayed that this exception be maintained, and this suit dismissed, and for any other order or decree which might be proper or necessary. The exception was overruled, and defendant excepted. The case was tried before a jury, which returned in' this case in favor of plaintiff in the sum of $26,783.53, by a vote of 11 to 1 when polled. The court rendered judgment in conformity to the verdict.
Defendant has appealed.
The first question to which we direct our attention is the action of the court in respect to the following special charges requested to be given:
“(1) If you find from the evidence that, prior to the institution of this suit, plaintiffs parted *567 with any portion of their interest in their alleged claim, you cannot, under the law, find a verdict in their favor, except for such amount as was not disposed of. You cannot, under the pleadings in this case, find a verdict in their favor as representing persons or corporations to whom any such interest was transferred, and your verdict must be confined to such amount, if any, as the plaintiffs in their behalf were entitled to recover at the institution of this suit.
“(2) Burden of proof is upon plaintiffs to make out their case, or by a clear preponderance of evidence, and if it is not so proven, on consideration of all the evidence; on both sides, that the alleged fire was not caused in the manner alleged in the petition, and through the fault of the defendant, you should not, under the law, render a verdict in favor of plaintiffs, even though you may not have been able to satisfy yourselves from the evidence as to the cause from which the fire did actually-originate.
“(3) If you find that the fire described in the petition was contributed to by the negligence of the plaintiffs in having the wiring or appliances in the house in a defective or improper condition, you must find for the defendant, even though you may considei' that defendant might have been guilty of fault contributing to the fire.”
The charge given to the jury was substantially as follows:
“Gentlemen of the jury: The question in this case is this: That if you find from the evidence that the defendant, through its fault, caused or permitted its trolley current to enter the house and damage the house and furniture belonging to the plaintiffs, then you should find for the plaintiffs for the amount of such damage; but if you should not be satisfied of this from the evidence you should find for the defendant.' If you should consider from the evi-' dence that the fire did not occur in this way, but occurred through the ordinary current on account of defective wiring or appliances in the house, you should find for the defendant. There is no doubt that a plaintiff may show the defendant’s liability for damages by circumstantial evidence thereby.
“The burden of proof is upon the plaintiffs to make out their case by a clear preponderance of evidence; and if it is not so proven, on consideration of the evidence on both sides, that the alleged fire was caused in the manner alleged in the petition and through the fault of the defendant,' you should not, under the law, render a verdict in favor of plaintiffs, even though you may not have been able to satisfy yourselves, from the evidence, as to the cause from which the fire did actually originate.
“The plaintiff in a civil case is not bound, like the state in a criminal case, to prove the case beyond a reasonable doubt; but the burden is upon the plaintiff to make its case reasonably certain. You must be satisfied by the evidence that the fire was occasioned as alleged by the negligence of the defendant in the manner alleged.
“I refuse the charge numbered 1 asked by the defendant, and I charge you that you are not to consider the question of the alleged interest of the insurance companies in the case, or of plaintiffs having parted with part of their interest; the question being matters of law for the decision of the court in its ruling in this ease, and for the consideration of this court, or of an appellate court, if proceedings thereafter should be taken. Accordingly, if you find' that the damages to the house and furniture alleged in the petition were occasioned by the fault,of the defendant you should find in favor of the plaintiffs for the entire amount of such damages, if you find the amount ’claimed to be correct.”
And at the conclusion of the charge the defendant then and there excepted to the refusal of the court to give the charge numbered 1 in the annexed request for charges, and then and there separately excepted to-the refusal of the court to give, except as above modified, charge numbered 3 in the-annexed request for charges, and the defendant duly reserved its bills of exceptions, and, having presented the same to the counsel for the plaintiffs, now asked the same to be allowed, settled, and filed as of date aforesaid.
Defendants urge, in support of their complaint of the ruling of the court, articles 15 and 172 of the Code of Practice; Church v. Ice Company, 44 La. Ann. 1022, 11 South. 682; Wolf v. New Orleans Tailor-Made Pants Company, 52 La. Ann. 1357, 27 South. 893; Barron v. Jacobs, 38 La. Ann. 370; Willard, Agent, v. Lugenbuhl, 24 La. Ann. 18. The plaintiffs, on the other hand, cite Kennedy v. Oakey, 3 Rob. 404; Succession of Delassize, 8 Rob. 259; Towne v. Cinch, 7 La. Ann. 93; Meyer v. R. R. Co., 35 La. Ann. 897; Smith v. Atlas Steam Cordage Company, 41 La. Ann. 1, 5 South. 413; Chicago, St. Louis & N. O. R. R. Co. v. Pullman Southern Car Co., 139 U. S. 79, 11 Sup. Ct. 490, 35 L. Ed. 97; Southern Bell Telephone & Telegraph Co. v. Watts, 66 Fed. 460, 464, 13 C. C. A. 579; and Southern Railway Co. v. Blunt & Ward (C. C.) 165 Fed. 260.
*569 In Chicago, etc., R. R. Co. v. Pullman Car Co., cited, the court said:
“It was in proof that at the time of the fire the cars of, the Great Northern & Louisiana were insured for the plaintiffs, that before the commencement of this action the insurance companies paid to it in full settlement of the loss and damage the sum of $19,000, and that this action is prosecuted under a written agreement between the plaintiff and the insurance companies that it should be conducted jointly by their counsel, and the amount recovered by suit, settlement, or compromise equally divided between them.”
It summed up its decision in these words:
“It results that the court was right in holding that the insurance upon the cars and the collection by plaintiff of the insurance money were immaterial matters in this litigation. The action was well brought in the name of the plaintiff, pursuant to its agreement with the insurance companies.”
In the case of Bell Telephone Company v. Watts the court said:
“Where the owner of property which has been destroyed by fire through another’s negligence has been paid a part of his loss by an insurer, who thereby becomes subrogated to the remedies of the assured, an action to recover from the wrongdoer the value of the property destroyed is properly brought in the name of the assured alone, and the insurer is neither a necessary nor a proper party to such action.
^
“It is true that the payment by the insurer works an equitable assignment of the assured’s claim against the wrongdoer; but the wrongful act is indivisible, and gives rise to but one cause of action. The insurer is subrogated only to the remedies-of the assured, and the rule is well settled that the suit is properly brought in the name of the person whose property has been destroyed. If he recovers a sum which, with the amount he has received from the insurers, is more than his whole loss, the excess belongs to the insurers, and he receives it as trustee for them. The wrongdoer is bound to respond in damages for the whole loss to the owner of the property, and how the money recovered is to be distributed does not concern him.”
The exception which the defendant took was that there was a misjoinder of parties; that it was not proper for the Burkes, in one and the same suit brought in their names, to recover that part of the claim which they had not assigned, and for the benefit of their assignee that part also which they had assigned.
Defendant argues the exception of misjoinder as if the insurance companies were “new plaintiffs” thrown into the case after it had been instituted; but we find that they -were never made parties on the record. The Burkes continued throughout the case as sole plaintiffs. On the second day of the trial, counsel for defendant, in open court, on their behalf, filed a motion, asking the court to direct the plaintiffs to declare what amount, if any, they were seeking to recover for themselves against the defendant, to which demand plaintiffs’ counsel replied :
“That they were suing for $26,785.53; that this suit was brought in their own name, and they admitted they had received $18,500 insurance money from the Hibernia and Sun Mutual Insurance Companies; that they had subrogated the insurance companies to their own rights to the extent of the amount received from the insurance companies; that they had agreed with the insurance companies, and were authorized by the insurance companies, to prosecute this suit for the full amount of the loss by fire as alleged in the petition; and that the defendant in the ease was without interest to make the motion.”
Defendant, with knowledge of this condition directly brought home to it, did not claim to have any defenses against the insurance company which would be cut off by the manner in which the suit was brought, nor does it claim now that it has been, in fact, in any way injured. It relies entirely upon the fact itself and the position claimed by it that, as a matter of law, plaintiffs should have been limited in the suit to prosecuting what portion of the original demand remained due to themselves. The effect of this would have been to have required that one single cause of action should be split into a number of actions, each action being by the assignee of a particular portion of the loss. Had the different parties partially interested in the loss brought separate actions, we thinji it can be safely *571 assumed that the defendant would have urged as a legal proposition that the plaintiffs had no right to divide one single cause of action into a number to suit his convenience or his interests. As matters stand, we do not think defendant sets up any just cause for complaint.
We now come to the merits of the case. The case comes before this court with a verdict of a jury in favor of plaintiffs on the facts as developed by the evidence, with a judgment of the trial court affirming the correctness of the verdict and the legal questions advanced by the plaintiffs.
Defendant does not, we think, seriously contest the fact that the damage to plaintiffs’ building was caused by electricity which was conveyed to it through the wires of the defendant company attached to it. There was no other electricity brought into the building, other than that through defendant’s wires. Defendant insists that the fire would not have occurred, had the fixtures in plaintiffs’ house been such as it (defendant) was entitled to require they should have been. Those fixtures had been in use for years before the fire, without injury or loss. They were accepted by defendant as sufficient. Had anything been wrong about them, defendant should have ascertained the fact by inspection and examination. Householders know nothing whatever of ■ electricity, nor what the requirements called for to insure safety. Defendant is engaged in that particular business, and supposed to be informed fully as to what is needed in the premises. If the fixtures having been used for years without any accident, and on a particular day a> fire develops in the dwelling by reason of the electricity conveyed into it by wires, some exceptional condition must have arisen on that day. The evidence in the, case satisfied the jury and the trial judge that the fire was due to an increased current having been passed through the wires on that day — an unusual • increase, which the arrangements in the house were not prepared to meet, through the fault of the defendant company.
Mr. Black, an expert witness on behalf of the defendant, advances a theory as to the origin of the fire which we think assumes as its premises too many unseen, unascertained, and unknown facts to be accepted as correct.
We do not feel justified in reversing the conclusions reached by the jury and the trial judge.
For the reasons assigned, the judgment is affirmed.
MONROE, J., dissents.