Statement of the Case.
MONROE, C. J.
This is an action for the recovery of rent of Eldorado plantation, accompanied by a seizure of property found thereon, and thereafter claimed by the wife of the lessee, who intervened for that purpose. The First National Bank of Vicksburg also intervened as the undisclosed principal for whom plaintiff was acting. There was judgment for plaintiff, from which defendant and his wife prosecute the present appeal. The facts disclosed by the record are as follows:
On February 17, 1912, the sheriff of Madison parish, acting under an order of seizure and sale from the district court, adjudicated to the plaintiff the plantation in question, together with certain mules, agricultural implements, and machinery, and upon the same day plaintiff leased the property so acquired to the defendant by a written contract containing the stipulation:
“The price of this lease is the sum of $1,400, payable November 15, 1912, and evidenced by a promissory note of O. A. Keller, of this date, for said sum, payable to the said Richard Griffith, bearing 8 per cent, interest after maturity.”
On August 12 following plaintiff instituted this suit, alleging said lease and note, and further alleging that the mules had been delivered to defendant in good condition, but that, in violation of the obligations of his contract, he had failed to feed them, and had otherwise treated them so cruelly as to cause seven of them, worth $850, to die, and by overworking them, for purposes not contemplated by the contract, had reduced those which did not die to such a weakened condition that it would entail much expense to render them again serviceable. He further alleged that he had good reason to believe that defendant would remove the property upon which he had a lessor’s privilege, and prayed for the issuance of a writ of provisional seizure, and for judgment, etc., and the writ was accordingly issued, and the sheriff seized thereunder ten mules, three road plows, seven farm wagons, and “about 75 acres” of growing rice, the whole valued at $3,033. On September 7 following Mrs. Selma Levy, wife of defendant, intervened, setting up a dation en paiement from her husband of date August 27, 1912, purporting to give in payment .and to deliver to her in rebursement of paraphernal funds to the amount of $2,150 said to have been received by him, the rice crops on Eldorado and Sydney plantations together with the possession and enjoyment of the land until the end of the year, and of nine leased mules, machinery, implements, and improvements thereon, all at a valuation of $500, subject to a rent claim of $700 for El *543 dorado and $50 for Sydney, also conveying to her ten mules said to have been purchased by defendant on August 9,1912, and so conveyed at a valuation of $1,500, subject to a Vendor’s privilege for $1,300, also conveying certain cattle and hogs. Intervener alleges that plaintiff’s seizure was not inspired by a desire to collect the rent, but was made for the purpose of wronging and oppressing her; that the plaintiff, Griffith, is the president of the First National Bank of Vicksburg, and, in buying and leasing the plantation in question, was merely acting for and on behalf of the bank; that he, the bank, and one Durfey entered into a fraudulent conspiracy the purpoáe of which was to get the plantation for delivery to some person or corporation unknown to intervener; that plaintiff’s allegations as to defendant’s neglect and ill treatment of the mules are untrue, and, if true, would show no obligation on the part of intervener ; that, in view of an overflow in the spring of 1912, demoralization of labor, and difficulty in obtaining advances, the rent of the (Eldorado) plantation was by agreement reduced from- $1,400 to $700; that by reason of the seizure she has been damaged in various amounts (which are specified) aggregating $3,550, and is entitled to recover $5,000 more as punitory damages, for all of which she prays judgments against Griffith, the bank, and Durfey in solido. ’ She also prays that she be restored to the possession of -the seized property on giving a forthcoming bond; and an order to that effect was made by the court on September 7 and executed by her giving bond and taking possession of the property on September 9, 1912, after which, on November 17, the bond was canceled by reason of the payment to the sheriff of the amount thereby called for. Other pleadings in the ease are as follows:
An exception by defendant alleging that the bank was and is the owner of the claim sued on, that Griffith has no interest therein, and that defendant has a just and legal defense against the bank.
An exception by plaintiff to the intervention of Mrs. Keller alleging that she denies that there exists any lessor’s privilege on the property seized, and yet makes part of .her petition the dation en paiement, in which she assumes the obligations of the lease, including the privilege resulting therefrom, and praying that intervener be required to elect between the two the position to which she will adhere.
A plea of estoppel -by plaintiff to the effect that the note sued on has matured and that defendant is estopped to deny the title of his lessor.
A motion by defendant to dissolve or quash the writ of provisional seizure on the ground that Griffith was not the owner of the note and claim sued on, and had no interest therein, and that the affidavit was not authorized by the facts and was insufficient.
Answer of the intervener (Mrs. Keller) to the motion calling on her to elect, in which she alleges that she received the dation en paiement, the growing rice crops, and the use of the plantations and of the property thereon (other than the ten mules acquired by her husband from Hudson & Sons) at a valuation of $500 and subject to a rent claim of $700 and received the 10 mules at a valuation of $1,500, subject to a vendor’s privilege for $1,-300. She disclaims all personal liability and alleges that her husband was insolvent at the date of the dation en paiement and has since been insolvent.
Intervention by the bank alleging that Griffith, one of its stockholders and officers, acted for it in buying and leasing Eldorado plantation and in bringing this suit, and that it now adopts his acts and makes them its own, and praying that the suit be held to have been brought' for its use and benefit, and that *545 there be judgment accordingly, and otherwise as originally prayed for.
A motion by defendant to strike out the intervention of the bank on the ground that it was filed too late, and is an attempt to supply a plaintiff in place of one who had no legal standing, after exception and motion to dismiss for lack of such standing, etc.
Answers by defendant to the original petition and to the intervention of the bank, in which defendant alleges that the bank, in consideration of troubles and losses sustained by him—
“agreed to make respondent, who consented to the same, the following reduction in said note and lease contract for said year, to wit: First, respondent to pay the bank $700 in settlement in any event, whether it be a good crop or a failure; second, in addition, that respondent would be expected to pay to said bank the remaining $700, or full rent, as originally agreed, provided the land put in rice on Eldorado plantation should yield, say, 18 sacks per acre for said year. If the yield should be as little as nine sacks per acre, then respondent was to pay no more than the $700 as aforesaid; if less than eighteen sacks per acre, and more than nine sacks, this second $700 to be reduced proportionately, 'as will more fully appear by reference to the letter of said bank to respondent, which is hereto attached and made part hereof and referred to for greater certainty.”
In other respects the answers with, somewhat greater particularity deal with the questions involved as does the intervention of Mrs. Keller.
The letter referred to by defendant was not annexed to his answer, but we find in the record what purports to be a copy of such a letter, which does not appear to have been filed, and bears the name of “B. W. Griffith,” as the writer, but, as it is accepted by counsel as the letter referred to in the pleadings and testimony, we also accept it, and find that it is in practically the language above quoted.
Opinion.
[1] 1. The plaintiff herein having, with the authorization of the bank, of which he was an officer, acquired for it, but in his own name, the plantation here in question, and having leased the plantation in his own name to defendant, taken defendant’s note payable to his order for the rent, and brought this suit thereon, all with the same authorization, the objection to his capacity to prosecute this suit was properly overruled. In Lacoste v. De Armas, 2 La. 263, plaintiff, as indorsee of a promissory note, brought suit thereon against the maker. The defense was that the note was given without consideration, and that plaintiff was the agent of the payee, and without the interest required by law to entitle him to sue. It was admitted by him that he was merely the agent of the payee, or of those for whose use the note was given to the payee, and it was contended that, under Code Prac. art. 15, he had no standing to prosecute the suit. But this court, through Porter, J,, said:
“That article is in these words: ‘An action can only be brought by one having a real and actual interest which he pursues, but as soon as that interest arises he may bring his action.’ It appears to us that there is nothing in the enactment which prevents the party in interest from conveying his leghl title to a third person, and, by such conveyance, giving that person a right to sue in his own name. No consequence results from it affecting the right of the defendant, for he can offer every defense to the suit of the agent he could present against the action of the principal. The agent can only be considered as the nominal plaintiff.”
And that doctrine has been many times affirmed. Hen. Dig. vol. 2, pp. 1124, 1125; Smith v. Atlas & Co., 41 La. Ann. 1, and authorities cited at page 4, 5 South. 413; Hanton v. New Orleans, etc., Co., 124 La. 562, 50 South. 544.
2. Inasmuch, however, as it developed in this case that the bank was the real party *547 holding the interest represented by plaintiff, and as defendant and Mrs. Keller (intervener) had defenses and claims to set np against it, we can see no good reason why, in the interest of all the parties and the more speedy determination and quieting of the litigation, the hank should not have been permitted to intervene, assert its rights, and thereby place itself in a position to he bound by the judgment to be rendered. We are therefore of opinion that the motion to strike out the intervention of the bank was properly overruled.
[2] 3. Article 3217 of the Civil Code confers a privilege for the rent of immovables upon “the crops of the year, and on the furniture, which is found in the house let, or on the farm, and on everything which serves to the working of the farm,” and the Code of Practice provides that—
“Art. 284. The plaintiff may, in certain cases, hereafter provided, obtain the provisional seizure of the property which he holds in pledge, or on which he has a privilege, in order to secure the payment of his claim.
“Art. 285. Provisional seizure may be ordered in the following cases: * * *
“2. When a lessor prays for the seizure of furniture or property used in the house or attached to the real estate which he has leased.”
In Smith v. Smith, 2 La. Ann. 448, it appeared that defendant’s crop was provisionally seized on a claim for money advanced to pay the salary of the overseer, and for horses and oxen purchased and necessaries furnished for the use of the plantation, and it was held that, while the writ of sequestration may issue on giving bond in all cases where the creditor has a lien and privilege, the writ of provisional seizure is restricted to certain enumerated cases of privilege, and is permitted to be issued without bond, and that the privilege claimed by the plaintiff then before the court was not included in the enumeration.
In the instant case plaintiff had a privilege and a right to a provisional seizure for the rent claimed by him, but there is no law which confers any such privilege or right with respect to his claim in damages for the loss of the mules.
It is therefore ordered and decreed that the judgment appealed from be amended by reducing the amount of the award from $1,-400 to $700 and by quashing and setting aside the writ of provisional seizure to the extent that it operates to secure so much of plaintiff’s claim as exceeds the sum of $700, with interest thereon and attorney’s fees and costs. It is further ordered that in all other respects said judgment be affirmed, and that plaintiff pay the costs of this appeal.