U. S. FIDELITY & GUARANTY CO.,
 Appellant

 vs No. 8249

CHARLES MAUTHE

May 8th, 1922.

Court of Appeal.
PARISH OF ORLEANS
FILED MAY 8/22
Lansburg

470

U. S. FIDELITY & GUARANTY CO.,
 Appellant.

 VS No. 8249

CHARLES MAUTHE

 CHARLES F. CLAIBORNE, JUDGE.

 The plaintiff, having issued its policy in favor of
Victor E. Hymel, to indemnify him for any damage to his auto-
mobile, and having paid $352.59 damages resulting from a colli-
sion of Hymel's automobile with that of the defendant, Mauthe,
and claiming a subrogation to all the rights of Hymel against
Mauthe, sues the latter for $352.59.

 The plaintiff alleges that on or about April 19th, 1920
Hymel was driving his car down St. Charles Avenue, on the lake
side road of the Avenue, owing to the fact that the river side
road was undergoing repairs; that near Louisiana Avenue he met
with the following accident: that Hymel was proceeding behind
a truck at about eight miles an hour, when the truck turned
into a side street; that Charles Mauthe, who was driving his
car up St. Charles Avenue towards his left instead of his right,
negligently ran into Hymel's car and damaged it to the extent
of $352.59 which plaintiff paid for him; and that by the terms
of the policy the plaintiff is subrogated to the rights of
Hymel against Mauthe.

 Defendant simply denied each and every allegation in
plaintiff's petition contained.

 There was judgment for defendant and plaintiff has
appealed.

 The evidence is that plaintiff was driving down St.
Charles Avenue in his automobile; he was driving on the side of
the road towards the Lake because the side towards the River

 471

was undergoing repairs; he was driving to the right of the road
within a foot or two of the neutral ground; in the car with him
were his wife and child and a friend R. A. Dubroca. Ahead of
them was a truck loaded with cotton. When they reached Josephine
Street, the truck turned to its left into Josephine Street.
Plaintiff's car had not at that moment reached Josephine Street;
it was about twenty or thirty feet from it. At that moment
plaintiff's car collided with defendant's. Plaintiff was on the
right side of the roadway where he should have been, while defen-
dant was on the left side where he had no right to be. This is
the testimony of the plaintiff and of his friend Dubroca. They
are corroborated by Jesse K. Rea a witness for the defendant
who says:

Q. How long after the accident did you get there?

A. I suppose about two or three minutes.

Q. Where was Mr. Mauthe's automobile when you first
saw it?

A. Corner St. Charles and Josephine, facing going up-
town.

Q. Was it near the neutral ground?

A. I couldn't say. When I saw it, it was in the middle
of the street about on the intersection of St.Charles
and Josephine.

Q. But taking St. Charles Avenue.

A. Right about the corner post, at the neutral ground.
That was after they hit. I don't know whether they
were rolled or anything, how far it was dragged after
it was hit.

Q. Is that the back or front of the automobile that was
at the corner?

A. The front.

The plaintiff was asked:

Q. On what side of the automobile did your automobile

472

come in contact with Mr. Mauthe's machine?

A. On the right side of my machine.

Q. The right side of your machine hit the left side of his?

A. No; he hit right square in the front.

Q. Now with regard to the neutral ground and the sidewalk,
where did this accident take place?

A. Right close to the neutral ground.

Q. How far from the neutral ground were you?

A. Well, about one and a half or two feet; running very
close.

In weighing the testimony of this witness we must remember
that he had no pecuniary interest in the result as the repairs
had been paid by the insurance company; while the defendant was
testifying to shield himself from responsibility.

Dubroca did not have the benefit of Hymel's testimony,
because, at the inception of the trial,

"at the request of counsel for defendant, the witnesses
in this case were ordered to retire from the court-room
until called".

He says that when the accident happened Hymel's car

"was within a foot of the curb, right near the curb, on
his right".

Bert Hayes, a witness for defendant, who took Mauthe's
car to the shop, being asked:

Q. Are you the one who repaired it?

A. Yes, sir.

Q. On what side of the car was the damage done?

A. I think on the right hand side of the car. I am not
positive, it is so long ago.

The defendant thus testifies:

"Both traffic was using the same street; as I got to
the corner, about eight or ten feet, there was a big cotton
float with cotton. As he was coming down it appeared he

473

forgot he had to go out Josephine, and made a quick sharp turn, all I could do to stop, I wasn't going fast, but I just about stopped. When the big cotton float turned out Josephine Street, made a quick turn, I was afraid he would drag me with him, right behind him was this Paige car. I was just possibly, at a standstill, I can't say, but I was moving very little if at all, and the Paige car, the left hand side of it, struck the left hand side of my car, removed my fender, my left light, and ploughed into my radiator. I was on the lakeside of St. Charles Avenue near the curb, possibly four or five feet from the curb, and in the middle of Josephine Street".

If the defendant means to say that he was traveling on the right side of the road, and that, while there, the left hand side of plaintiff's car struck the left hand side of his car, he is contradicted by the plaintiff and his guest, and especially by the witness Hayes who took his car to the shop and repaired it.

We rise from a critical examination of the whole testimony with the conviction that the plaintiff was driving down the street on the right side near the curb, where he should have been. That the defendant occupied one of two positions: either he was driving up the street, on the left side of the road near the neutral ground, where he had no right to travel, or, driving on the right hand side, when he reached Josephine Street, and saw the truck blocking his advance he swerved to the left to pass the truck, and thus threw himself into the way of plaintiff's car. In both positions he violated the traffic ordinances, and, according to several decisions rendered by us, made himself liable for any damage caused thereby. Joseph vs Orleans Ice Man'g. Co. No. 8232.

In order to reconcile defendant's testimony with the facts, an attempt was made, in argument, to say that while defendant was running up the street, he was surprised by the truck suddenly turning into Josephine Street, across his path, and that, in order

474

to save himself from imminent danger and harm, he as suddenly, swerved to the left to avoid the truck and thus collided with plaintiff's car, and that the accident was not the fault of either the plaintiff or the defendant, but was the fault of the absent other party, the truck. No such defense was made in the answer, which certainly would have been made if it had conformed to the facts. No such testimony or explanation was given by defendant. One the contrary, he denied it. He said:

Q. "Were you able to see his car before the accident?

A. No, sir, this float turned so quick it scared me, I thought he would drag me out Josephine. All I could do was to stop.

Q. Did you attempt to run in towards the neutral ground, to pass the float?

A. No, sir, I couldn't. There wasn't time enough to do it. All I could say, the vibration of my car was so strong as I was trying to stop.

Q. And you say you were going eight miles an hour. You mean at the time the accident occurred you had almost come to a stop, hadn't you?

A. I did when he bounded off, I couldn't come to a dead stop, but I tried my best to stop.

Prior to filing his answer, the defendant had pleaded that plaintiff's petition disclosed no cause and no right of action. The plea was based on the ground that plaintiff, Hymel, had no right to transfer his claim to the Insurance Company, because

"this is a suit for the recovery of damages and is not transferable".

No authority is quoted in support of the exception, and we know of none. It is said that the effect of the transfer is to deprive the defendant of his right to reconvene. But if the defendant suffered any damages he may bring a direct suit. C. C. 2642 (2612) authorizes the transfer of all credits or claims, without

exception. The validity of transfers of damage claims by the
insured to the insurer after payment of loss by the latter has
been recognized in Haviton vs N. O. Light & Power Co. 124 La.
562. See also 26 A. 447; 47 A. 1563 (1569, 1573); 50 A. 1147
(1151); 1 Woods 72; 27 Demolombe & 595. ~ *33 Dalloz p 488 / C.J. 5182 S 1965*

In the case of Gordon vs Millaudon 16 A. 347 the syllabus
reads:

"Plaintiff being the purchaser of a balance of account due
by defendant cannot be held liable on a reconvention for
any amount due by his vendor".

In the course of the trial defendant objected to any testi-
mony tending to establish a collision and damage on April 17th.
at the corner of St. Charles and Josephine Street on the ground of
variance between the proof and the petition which alleged that
the accident had happened on April 19th at the corner of St.
Charles Avenue and Louisiana Avenue. Again the defendant quotes
no authority. The trial Court properly overruled the objection.
As to the date, the petition alleged that it was

"on or about April 19th"
which sufficiently indicates the accident declared upon, as there
was only one accident. The corner of the street was not of the
essence of the suit, and the defendant was not taken by surprise.

"Though the allegations be indefinite and informal, yet,
if from the pleadings or proccedings before trial the oppo-
site pary has sufficient notice of the nature of the demand
or defense to be advanced and could not be surprised evidence
thereof will be received". 2 H. D. 1155 (1); 15 A/ 501;
31 Cyc 72 (3) 682.

"Where an instrument is not the gist of the action, a
slight variance between that alleged and proved is not
material". 3 N. S. 61.

"Evidence that a curator was appointed in 1813 will be
admitted under the allegation that he was appointed in 1815".

476

4 N. S. 190.

"Every variance in point of time between the allegations and evidence is not fatal". 6 N. S. 9.

"The date is not of the essence of the lease of labor; and evidence that it was made on a day different from that alleged is sufficient". 14 A. 793.

"When plaintiff alleges a contract for making 300,000 bricks he may offer one to make 200,000 if defendant is not surprised and can suffer no injury". 5 A. 575.

"But, in general, the allegations of time, place, quantity, quality, and value, when not descriptive of the identity of the subject of the action, will be found immaterial, and need not be proved strictly as alleged". 1 Greenl. Ev. ⊜ 61; 31 Cyc 706 (10).

"A variance which does not affect the gist of the action as alleged is immaterial. x x x It has been decided in a number of cases that a variance to be material must be such as to mislead or surprise the adverse party". 31 Cyc 702, 703.

But under any conditions the plaintiff would have been permitted to amend his petition to state the correct date and place. 1 Greenl. ⊜ 73.

The amount of repairs to plaintiff's car paid by the plaintiff insurance company is shown to have been $352.59.

It is therefore ordered that the judgment herein be reversed and set aside; and it is now ordered that the defendant Charles Mauthe be condemned to pay to the plaintiff the United States Fidelity and Guaranty Company the sum of Three Hundred and fifty-two 59/100 dollars with five per cent per annum interest from October 26th, 1920 till paid and all costs of suit in both Courts.

Judgment reversed. Judgment for plaintiff as prayed for.