ROYAL INS. CO., LIMITED, OF LIVER-
POOL, ENGLAND, v. COLLARD MO-
TORS, Inc.*

No. 16735.

Court of Appeal of Louisiana. Orleans.

Feb. 21, 1938.

* Rehearing refused March 21, 1938.

St. Clair Adams & Son and P. A. Bienvenu, all of New Orleans, for appellant.

Jos. M. Jones, Wm. Behan Dreux, and A. J. Waechter, Jr., all of New Orleans, for appellee.

JANVIER, Judge.

Royal Insurance Company of Liverpool, England, a fire insurance company, having paid to an insured, Orleans Manufacturing Company, the loss sustained in the destruction by fire of an automobile in the repair shop of Collard Motors, Inc., obtained a subrogation and now seeks recovery from Collard Motors, Inc., alleging that the fire resulted from negligence attributable to that corporation.

Most of the facts are set forth in a stipulation entered into by counsel:

"It is stipulated by and between counsel that the Royal Insurance Company, Limited, of Liverpool, England, plaintiff, under date of January 30th, 1935, issued to the Orleans Manufacturing Company, its policy of insurance Av 2966, insuring and protecting the said Company for a period of one year from loss by fire of its 1935 Dodge Sedan, serial number 3778326, Motor No. VI28831.

"That on or about April 11th, 1935, said Orleans Manufacturing Company sent its Dodge sedan to the Collard Motors, Inc., defendant herein, for the purpose of having it serviced, due to the fact that it was hard to start.

"That while said automobile was in possession of the defendant, it was destroyed by fire on the morning of April 11th, 1935.

"That at the time the automobile was placed in the care of the defendant, that it was in good condition, extraordinarily and as the result of the fire it was damaged in the amount of $700.00.

"That the Royal Insurance Company of Liverpool, England, paid the Orleans Manufacturing Company the sum of $700.00, under the terms of the policy and that the Orleans Manufacturing Company has subrogated to the Royal Insurance Company of Liverpool England, plaintiff, all of its right and title in the claim against the Collard Motors, Incorporated, and that the subrogation attached to the petition is the one issued by the Orleans Manufacturing Company."

Defendant alleges its freedom from liability and, pointing to the well-established doctrine that a bailee without fault cannot be held liable for damage to nor destruction of property which forms the subject of the bailment, relies upon the fact that plaintiff is unable to show that the fire originated from a cause chargeable to the negligence of defendant, or of its employee.

There is, unquestionably, a well-recognized rule that, in the usual case of loss by fire of articles in the possession of a bailee, the bailee, in order to avoid liability, need only point to the fire itself and that, then, the burden shifts to the bailor to show that the bailee was nevertheless not without fault either in connection with the origin of the fire, or in failing to take proper steps to extinguish it. This rule results from the principle that a bailee is not an insurer, need only afford to the articles intrusted to him "the same diligence in preserving the deposit that he

uses in preserving his own property," Civ. Code, art. 2937, and, therefore, may avoid liability by showing freedom from fault, which he may do by showing destruction by fire. It is contended, and those cases which support this view hold, that when he shows that a fire occurred, he raises a presumption of freedom from fault and shifts the burden to the bailor to show that there was, nevertheless, negligence on his part. Counsel for defendant states that the duty of the bailee is met when he "proves that the failure to return the property is due to destruction by fire," and he says further that "in such cases the burden of showing wherein the bailee was negligent and breached a duty shifts to the shoulders of the bailor." He relies upon certain cases involving destruction by fire. In McCullom v. Porter, 17 La. Ann. 89, the Supreme Court said:

"The accident by overpowering force being clearly proven, it was incumbent on plaintiff to sustain his demand, to show that the loss had been caused by the fault or neglect of the defendants."

In Scott v. Sample, 148 La. 627, 87 So. 478, 480, the same rule appears, stated as follows:

"It is true * * * that, where a bailee fails to return property intrusted to his care, he bears the burden primarily of showing why he has failed to do so. But, when he has shown that the cause was due to destruction of the bailed goods by fire, the burden again shifts to the shoulders of the bailor to show that the fire * * * was caused by the bailee's negligence."

While it is true that in Scott v. Sample the decision was not necessarily based on the rule now under discussion, still it is clear that the court approved the doctrine contended for by defendant as applied to general conflagrations.

More recently, in Austin v. Heath, 168 La. 605, 122 So. 865, the court said:

"As the defendant, as bailee of the cotton, has shown that the cotton was destroyed by an overwhelming force, the burden of proof is on plaintiff to show that the fire originated or was permitted to spread through some fault or negligence on the part of defendant."

■ But, running through those decisions, there is in each a clear intimation that the cause of the fire and its general nature gave prima facie evidence of absence of fault on the part of the bailee, and in none of them do we find facts such as we notice here where there was no general conflagration. Here the fire originated entirely within the bailee's premises; it was limited in its scope—confined entirely not only to the interior of the premises solely within the control of the bailee, but, in fact, to the sole and single object which formed the subject of the bailment. It would indeed do violence to the reasons on which is established the general rule contended for by defendant to extend that rule to such facts. To do so would give to any bailee an "open sesame" whenever, through his carelessness, property intrusted to him might be burned. He could merely point to the fire, say, "I know nothing about it," and rest secure, requiring the bailor, with the hardihood to persist in his claim, to prove that there had been negligence on the part of the bailee, which, having no knowledge whatever of the real facts, of course he could not do. We think it is a fairer rule, where such a limited fire occurs, that the bailee should, as he must in all other cases, prove his own freedom from fault and should not be permitted to rest on the proof of the fire alone. Of course, in doing so he need not ordinarily go so far as to show the actual cause. This is not required even of a carrier of passengers. Cusimano v. New Orleans Public Service, Inc., 170 La. 95, 127 So. 376. But, where the facts are so exclusively within his knowledge, he must show all facts of which he has knowledge and these facts must not involve negligence on his part.

■ The implements which the bailee used in this case—the gasoline which, as we shall later show, was spilled on the floor, and the tools which were applied to the car—were so exclusively within the control of the bailee as to place upon it the burden of absolving itself from negligence.

In Jones v. Shell Petroleum Corporation, 185 La. 1067, 171 So. 447, 449, the Supreme Court, citing 45 C.J. § 768, p. 1193, said:

"Where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in absence of explanation by defendant, that the accident arose from want of care. 45 C.J. § 768, p. 1193."

Later in the opinion appears the following:

"Thus, when the thing which produced the injury is under the control of the defendant or his servants and the injury would not have occurred unless negligence had been present in some form and the facts causing the injury are peculiarly within the knowledge of defendant and not equally accessible to plaintiff, the burden is on defendant to explain the cause of the accident, if he desires to escape from the inference of negligence."

■ Counsel for defendant objects to the application here of the principles of the doctrine of "res ipsa loquitur" as discussed by the court in that case for two reasons: First, because—so counsel say—in the instant case the relationship is one of bailor and bailee, whereas in the cited case the lessor and lessee relationship was involved; and, secondly, because it appears from the dissenting opinion in the cited case that the doctrine of "res ipsa loquitur" was not properly involved there. This case is cited, not as authority for the application of the doctrine in suits by bailors against bailees, but merely as containing a very clear statement of the doctrine itself and of the reasons for its application in any case where those reasons exist. Wherever the rule is applicable, its application results from the same principles—that he who exclusively has the evidence concerning the thing which, in his control and possession, causes the accident, is under the obligation of producing that evidence and exonerating himself from fault. Even in the dissenting opinion it was not contended that the rule was not properly stated, or that it is not applicable where the facts are exclusively within the knowledge of one of the parties and the thing which causes the accident is exclusively under his control.

■ Those reasons exist here, and we conclude that, because of the circumstances surrounding the burning of the automobile, defendant was under the necessity of absolving itself from fault, and that a mere reference to the fire, without showing, in addition, the absence of causal connection between the negligence of itself or of its employee and the fire, is not sufficient to free it from liability.

■ When we examine the facts, we find certain occurrences which we are unable to reconcile with due care on the part of defendant. In spite of the protestations of defendant's employees that the tank of the automobile was being removed in the customary way, we doubt that it is customary to permit so much as a cup of gasoline to spill upon the floor as the result of knocking a funnel out of a can into which the gasoline is being drained. Nor does it seem to us consonant with proper care for an employee, while open gasoline is draining from one container into another and while some of it is spilled on the floor, to apply a metal tool to another piece of metal only a few inches from the draining gasoline and only a foot or two from that which is spilled upon the floor. We find in defendant's answer this very suggestion—that a spark was created by contact between the two metals:

" * * * while respondent's employee was removing one of the bolts from one end of the tank a spark flew from the wrench which he was using, igniting the gasoline in the bucket and resulting in the fire * * *."

Defendant now contends that that allegation was inadvertently and erroneously made and that the occurrence thus suggested did not take place. Perhaps not. But the suggestion in the answer indicates a realization of the well-known physical fact that oftentimes contact between metals causes sparks.

While the spilling of the gasoline may be an ordinary occurrence which usually takes place when such repairs as those involved here are made, we think it negligence to perform such work as was done here until the spilled gasoline has been wiped up and until gasoline running from one receptacle into another has been safely replaced in a closed or otherwise safe container.

It is true that the employee says that he did not wipe up the spilled gasoline because "there was not enough to wipe up." But there was certainly enough to burn, because he also says that it was the burning of the gasoline on the floor that first attracted his attention.

Plaintiff shows that the battery of the automobile had not been disconnected, and counsel argue that without removing or disconnecting the battery it is negligence to perform operations near the gasoline tank. Defendant maintains that it is not customary to remove batteries in such cases.

In Royal Insurance Company, Ltd., v. Romain Motor Company, Inc., 10 La.App. 1, 120 So. 261, we said:

"While some shops do not disconnect the battery before washing the motor, the evidence leaves us convinced that by far the safer practice is to follow the method advocated by a great many of the shops; that is to say, by disconnecting the battery wires."

But whether, under the circumstances shown here, that failure constituted negligence, we find it unnecessary to determine. We find other acts—the spilling of the gasoline, the knocking over of the funnel, the working with metal tools on other metal near the spilled gasoline—any one of which might have caused the accident and each of which was, as we have termed it, negligence.

Defendant argues that no causal connection has been shown between any of the acts of negligence and the fire itself. In view of the acts of negligence and the ensuing fire, we feel that the burden was on defendant to show clearly that the latter did not result from any one of the former. We are not satisfied that this burden has been discharged.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff and against defendant in the full sum of $700, with legal interest from judicial demand and for all costs.

Reversed.