Aaron B. Dupuy, whose DeSoto automobile was damaged by fire while it was in the repair shop of defendant corporation, Graeme Spring Brake Service, Inc., waiting for a mechanic to make certain repairs to its speedometer, brings this suit for $129.95 against said corporation, alleging that to be the amount expended by him in repairing the damage caused by the fire and charging that the said defendant is liable to him for his said loss. Defendant admits that the said automobile was left in its repair department in order that certain repairs might be made to the speedometer and that while the car was in its shop it was damaged by a fire which originated in and was confined solely to that automobile, *Page 658 
but defendant denies that it is liable for the loss and it also denies that the damage was as extensive or that the repairs made necessary by the fire were as expensive as plaintiff alleges that they were.
At the trial below counsel for defendant made the following statement:
"I believe that Mr. Dupuy has recovered the amount of insurance from the insurance company. If Mr. Dupuy has been paid and the insurance Company has been subrogated to the rights of Mr. Dupuy, the suit should be in the name of the insurance company. I ask that the plaintiff be placed on the stand for that question alone."
Plaintiff was then placed on the stand and after he had admitted that prior to the loss he had secured a policy of fire insurance on the car, he gave the following evidence:
"Q. Were you paid by the fire insurance Company? A. Yes.
"Q. Have you any claim against the fire insurance company for any further damages growing out of this thing or have you been paid in full? A. I have been paid in full with the exception of the depreciation."
Counsel for defendant then orally moved the court to dismiss the suit on the ground that plaintiff, having been paid in full by the insurer had retained no right of action against the defendant corporation. He later filed a written exception based on this fact.
This exception was overruled and, after trial on the merits, there was judgment for plaintiff and against defendant as prayed for for $129.95.
Defendant appealed and when the matter first came before us we reached the conclusion that since Dupuy had been paid by his insurer, he no longer had any claim against the defendant corporation. We dismissed the suit on the exception of no right of action. See Dupuy v. Graeme Spring Brake Service, Inc., La.App., 17 So.2d 490. The views which we then entertained were based on what we believe now to have been an incorrect interpretation of the opinion rendered by our Supreme Court in Hanton v. New Orleans C.R. Lt. Power Co., 124 La. 562, 50 So. 544, 548. There a dwelling, valued at $26,785.53 and owned by the plaintiffs, had been destroyed by a fire which they alleged had been caused by negligence of employees of the light power company. Plaintiffs, prior to the loss had secured policies of fire insurance and had collected from the insurers $18,500, which was the amount to which they were entitled under the policies, and, by subrogations, had transferred to the insurers the claim against the alleged tort feasors up to the amount of those payments, to-wit $18,500. The plaintiffs then, without referring in their pleadings or otherwise to the fact that they had been paid that amount by the insurers or to the fact that they had given subrogations to the insurers, had brought suit against the said Light Power Company for the full amount of the loss, to-wit, $26,785.53.
When, during the trial, it was shown that the claimants had received $18,500 from the insurers and had subrogated the insurers pro tanto to the claim against the Light Power Company, counsel for the defendant company immediately suggested to the court that the claim of the plaintiffs should be considered as reduced by the amount which they had received from the insurers and that they should not be permitted to claim any part of that amount either on their own behalf or as representatives of the said insurers. This suggestion, treated as an exception, was overruled and there was judgment for the claimants for the full amount, to-wit, $26,785.53.
On appeal the Supreme Court affirmed this judgment, and in doing so said that even though the claimants had been paid the greater portion of their loss by the insurers inasmuch as they had retained against the tort feasors a claim for the unpaid portion of the loss and might assert their claim for that balance, they might also and in the same suit make claim for that portion of the loss for which they had been paid and that it would be assumed that in asserting claim for that part of the loss for which they had been paid they were acting for the subrogated insurers. The court said that there was only one cause of action against the tort feasors and that cause of action might not "be split into a number of actions" and that therefore the original claimant, having retained a part of the claim, might sue for the entire loss.
We interpreted this as evidencing the view that where a loss has been caused by a tort feasor and the person who sustains the loss has received payment from his insurer, he may, nevertheless, bring an action *Page 659 
ex delicto for the whole loss provided he has retained a part of the claim and has not been paid by the insurer for the entire loss, but that if he has received payment in full he may no longer make claim against the tort feasor. Applying that conclusion to the facts here, we held that Dupuy, the plaintiff, had retained no part of his original claim and therefore might not assert against the alleged tort feasor any claim for loss caused by fire.
In application for rehearing counsel for the plaintiff strongly urged us to reconsider the matter and for two reasons: First, he argued that as a matter of fact the claimant did retain a part of his claim, and, admitting that the claimant had said that he had been "paid in full," claims that we overlooked the significance of the added clause "with the exception of depreciation," and, secondly, counsel argued that even though a claimant may have been paid in full by his insurers, so long as he has not subrogated the insurers to the full claim and notified the tort feasors of the subrogation he, the original claimant, may still assert the full claim against the tort feasor.
We find no merit in the suggestion that the claimant, since he has not been paid for depreciation, has retained a part of his claim. As we said in our original opinion, the petition sets up no item of damage based on the depreciated value of the car due to the fire. We realize that an automobile which is damaged in a fire or in an accident may sustain a depreciation in value in addition to specific physical damage and that even though all physical damage may be repaired, there may still remain a depreciated value merely because the car has been in a fire or in an accident, and we have said, as have other courts, that the depreciation represents an item of damage or loss for which suit may be brought. Weis v. Pan-American Petroleum Corp., 12 La.App. 661, 126 So. 90. We realize, of course, that other courts think that the recovery must be limited either to the difference in value before and after the accident or to the cost of making such repairs as are necessary. See Bader v. Marlin, 160 Wn. 460,295 P. 160, 78 A.L.R. 917. But even if, ordinarily, recovery may be had for that item, that is to say for the depreciated value resulting from the accident after all physical damages have been paid for, no such item of damage was sued for here. Therefore when plaintiff stated that he had been paid in full for all loss except depreciation, his statement meant that he had been paid in full for everything for which, in this suit, he had made claim.
But as we now view and interpret the Hanton case and other Louisiana decisions, we think that it is clear that even though an automobile owner, whose car has been damaged by a tort feasor, has received from his insurer the total amount of his claim for damage, he may, nevertheless, maintain against the tort feasor a claim for the damage provided the tort feasor has not been formally notified that the claim has been assigned to someone else. In Louisiana the insurer is not, by the payment of the claim or a part of it, automatically subrogated pro tanto to the rights of the payee against a tort feasor. See Mayer on Workmen's Compensation Law in Louisiana, page 40; Bouchon v. Southern Surety Co. et al., 151 La. 503, 91 So. 854. See also C.C. arts. 2643, 2644.
In addition to Hanton v. New Orleans C.R. Lt. Power Co., supra, which we now interpret as authority for the view that even though he has been paid by the insurer, the claimant may still sue the tort feasor who has not been notified of an assignment, for the full amount of the loss, we now find that on two occasions we, ourselves, have so held and that in one case, Ayres v. Wyatt et al., 185 So. 84, 86, the Court of Appeal for the Second Circuit followed this view. In that case Judge Taliaferro said:
"Defendants are not concerned with and have no right to inquire into the transactions between the insured and insurer terminating in a settlement between them. Whether the amount of such a settlement be great or small does not to any extent modify or affect the liability of the tort feasor; and, notwithstanding such a settlement and the legal subrogation or equitable assignment superinduced thereby, the insured retains the right to sue for the full amount of damages involved, especially where, as is true in the present case, the amount of insurance paid does not equal the amount of damages sustained."
Our own cases to which we have just made reference are Hendren v. Crescent City S. M. Water Co., Inc., 1 La.App. 625, and Henican v. Woodman and Baldwin, Orleans App. No. 9762, 1 La.App. 281. In the Hendren case we said: *Page 660 
"It is contended by counsel for defendant that no recovery can be had by plaintiff for the reason that he has been fully indemnified by the insurer of his car, and that for the further reason, plaintiff has failed to offer or to prove by competent evidence the itemized bill annexed to his petition. We find no merit in either of these contentions. It is immaterial that plaintiff's car was insured or that he has been paid the damages sustained, the amount of which is now claimed against defendant. Defendant's liability cannot be affected by such facts, and he can neither plead nor attempt by evidence to prove such defense. The ruling of the trial judge, excluding such proof, was correct. This court has previously so held in the cases of Colovich v. National Fish Oyster Co., 8 Orleans App. 47 (writ denied by Supreme Court); Henican v. [Woodman and] Baldwin, Orleans App. No. 9762, [1 La.App. 281]; Hanton v. New Orleans [ C.R.] Light Power Co., 124 La. 562, 50 So. 544. See also Griffith v. Keller, 147 La. [540], 546, 85 So. 233; State v. Bell,153 La. 823, 96 So. 669."
In Southern Bell Telephone Telegraph Co. v. Watts, 66 F. 460, 464, the U.S. Circuit Court of Appeals for the Fourth Circuit said:
"* * * The wrongdoer is bound to respond in damages for the whole loss to the owner of the property, and how the money recovered is to be distributed does not concern him."
In Chicago, etc., R. Co. v. Pullman Southern Car Co.,139 U.S. 79, 11 S.Ct. 490, 491, 35 L.Ed. 97, the Supreme Court of the United States considered facts which, we think, presented this same legal question. There certain sleeping cars of the Pullman Company were in the possession of the Railroad Company which, by contract with the Pullman Company, had assumed responsibility for damage occasioned by "accident or casualty." The Pullman Company had itself secured policies of fire insurance which protected these cars. The cars were damaged by fire and the Pullman Company collected from its insurers the full amount of the loss and agreed with the insurers that on their behalf but in its name, it would bring suit against the Railroad Company under the contract which placed responsibility on it for damage occasioned by "accident or casualty."
The defendant Railroad Company asserted that the Pullman Company, having been paid by its insurer, could not, in its own name, maintain the action against it.
On the trial the jury was instructed
"that the insurance of the cars by the plaintiff was res inter alios acta and had no determining effect upon the right of the plaintiff to recover in this action. * * *"
The defendant challenged this instruction and, concerning the instruction, the Supreme Court said:
"We are of opinion that the obtaining of insurance. by the plaintiff, the collection of $19,000 in full settlement of its claim against the insurance companies, and the agreement between it and them for the bringing of this action for their joint benefit, were matters with which the railroad company had no concern and cannot affect the determination of this case. * * *"
In the same opinion we notice the following:
"* * * The inquiry in this action is as to the amount for which the railroad company is bound on its contract with the plaintiff, and the recovery is not affected or limited by the amount collected from the insurance companies. * * *"
As is recognized in Huddy's Cyclopedia of Automobile Law, Vol. 1314, Section 199, there are two views on this question. In that work, however, it is shown that Louisiana is among those jurisdictions which hold that:
"* * * notwithstanding the fact that the insurer has paid the assured the loss occasioned to the insured car, the assured has a right of action in his own name against the wrongdoer, and the insurance company is not a necessary party to the action. * * *"
Counsel for defendant declares that to follow this view is violative of the provisions of Art. 2134 of our Civil Code, which, being one of a series of articles on the methods by which obligations may be extinguished, provides that:
"The obligation may even be discharged by a third person no way concerned in it, provided that person act in the name and for the discharge of the debtor, or that, if he act in his own name, he be not subrogated to the rights of the creditor."
We note in the first place that no extinguishment of the obligation of the *Page 661 
debtor takes place unless the third person making the payment "act in the name and for the discharge of the debtor." Surely an insurance company which pays its obligation under this policy cannot be said to be acting either in the name of or for the discharge of the tort feasor who caused the loss.
The principal fault which we find with this theory that an insurer who pays an insured for damage caused by a tort feasor thereby discharges the debt of the tort feasor is that that contention fails completely to recognize the fact that in such circumstances there are two separate and distinct obligations, one based on a contract of insurance and the other based on liability resulting from tort. We see no reason to hold that an insurer who pays his contractual obligation thereby discharges the tort obligations of the tort feasor. The distinction between these two obligations is recognized in Bouchon v. Southern Surety Co., supra.
We are therefore of the opinion that when the insurer paid to plaintiff the amount to which he was entitled under the policy, it did not by that payment discharge the tort obligation if any existed in defendant in favor of the plaintiff.
We thus reach the question of whether or not the defendant corporation is responsible for the loss caused by the fire. In Royal Insurance Company v. Collard Motors, 179 So. 108, 110, we considered a claim by an owner against a bailee for damage caused by fire while the automobile, which was damaged, was in the bailee's establishment undergoing repairs. There we discussed at length the jurisprudence concerning the liability vel non of such a bailee where the bailed object is damaged or destroyed by fire. We found that the bailee is, of course, not liable where there is no fault and that usually where the bailed object is damaged or destroyed by fire the bailee need only point to the fire itself and shift to the bailor the burden of showing that the first was caused by negligence of the bailee or could have been extinguished by the exercise of due care or, we may add, unless the bailee was at fault in failing to take reasonable and usual. precautions to prevent such a catastrophe.
But we also added that this general rule permitting the bailee to shift the burden of proof by merely showing that the bailed object was damaged or destroyed by fire applies only where there has been a general conflagration which is not limited to the "interior of the premises solely within the control of the bailee" or where it is not limited to "the sole and single object which formed the subject of the bailment." We based our view very largely on what our Supreme Court had said in Jones v. Shell Petroleum Corporation, 185 La. 1067, 171 So. 447, 449, from which opinion we now repeat the following:
"`Where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in absence of explanation by the defendant, that the accident arose from want of care. 45 C.J. § 768, p. 1193.'
"* * * `Thus, when the thing which produced the injury is under the control of the defendant or his servants and the injury would not have occurred unless negligence had been present in some form and the facts causing the injury are peculiarly within the knowledge of defendant and not equally accessible to plaintiff, the burden is on defendant to explain the cause of the accident, if he desires to escape from the inference of negligence.' * * *"
But even where the fire is limited to the "sole and single object which formed the subject of the bailment" or "the thing which caused the injury complained of is shown to be under the management of defendant or his servants," the burden which rests upon the bailee is not so onerous as to require that he show exactly how the fire originated. All he need show is his own freedom from fault. In Royal Insurance Company v. Collard Motors, supra, we said:
"* * * Of course, in doing so he need not ordinarily go so far as to show the actual cause."
Concerning the proof which one must offer who, because of the doctrine of res ipsa loquitur, is under the duty of explaining such an occurrence, the Supreme Court in Davis v. Teche Lines,200 La. 1, 7 So.2d 365, 367, said that he need not show exactly what had caused the loss but could extricate himself from liability by merely showing his own freedom from fault. And as to what proof should be required to show such freedom from fault the Supreme Court said: *Page 662 
"* * * In a case where no specific act of negligence is proven, and the plaintiff relies solely and only on the inference or presumption arising from the rule of res ipsa loquitur, all that could be required of the defendant is to give an explanation sufficient to rebut the inference or presumption of negligence. It would be unreasonable and unjust to cast the defendant where he has shown due care simply because he was unable to determine the exact cause of the fire. * * *"
If then defendant here, though unable to show the cause of the fire, has shown that, whatever may have been the cause, it did not result from negligence on its part, it should not be held responsible.
We now examine such meagre facts as are shown concerning the origin of the fire to determine whether defendant has shown its own freedom from fault.
Plaintiff testified that on the day on which the fire occurred he had driven his De Soto car to defendant's shop and that Mr. Landry, an employee of defendant, "came over and looked at it and said: `We have to get those parts from the factory.'" Mr. Landry says that in the presence of plaintiff he disconnected the speedometer shaft to see what might be needed and did no further work on the car. Mr. Dupuy further says that when he next saw the car the fire had taken place and that "the dashboard and ignition, the radio and all those different things connected with the ignition under the dashboard were burnt * * *" When asked whether the damage was "in the vicinity of the speedometer," he answered: "Yes sir, to the best of my knowledge." He did not know where the fire had originated.
Mr. Landry said that he did not attempt to make any repairs to the speedometer and that all that he did was disconnect the speedometer cable to determine the trouble; that he had then said to the plaintiff that they would have to get the parts and that he left the car after placing the cable in a position farther removed from the wiring of the car than that in which it had originally been. He said positively that he had touched no wires and no electrical equipment. He stated that after leaving the car, he went about other duties and, about 20 or 30 minutes later, noticed that the car was on fire.
He said that the fire had originated on the "wiring side of the car" and he added that this was the left side, and that on the left side there are located "all of the light switches * * * the clusters of wires I referred to before." He suggested that there may have been some wires on which the ignition had worn off and that purely by chance these wires might at that time have come into contact and created a "short" and might have caused the fire. He added that on many occasions wiring on automobiles becomes worn and that no one can tell in advance when such worn places may come into contact and cause a fire. He was asked: "In your opinion, as an expert, could your operations have caused any fire to that car?" He answered: "No," and when asked whether he had ever heard "of cars catching fire because of shorts in the wires * * *" he answered: "Yes, sir, quite often." He was asked: "Does a car sometimes catch on fire from a short in its wiring when there has not been any recent work done on those wires?" And he answered: "Yes, sir, I think so." And the record contains no evidence which throws doubt upon these statements.
Is this evidence sufficient to again shift to the plaintiff the duty of showing that the defendant was at fault? Of course, it does not affirmatively show how the fire originated but, as the Supreme Court said in Davis v. Teche Lines, Inc., supra, this is not necessary.
All that can be said about the facts is that they evidence a suspicious coincidence; that the fire broke out in a place very near the speedometer cable about 20 or 30 minutes after that cable had been disconnected. But is such a coincidence sufficient to justify the conclusion that the moving of the cable was the cause of the fire?
In Royal Insurance Company v. Collard Motors, supra, we held liable an automobile repair company where it was unable to show the cause of the fire but we did not base our conclusion on the fact that it had failed to show the cause but on the fact that several acts of negligence of the employees of the defendant were shown and that any one of these negligent acts might have brought about a conflagration. We said there that where such acts of negligence are shown, the defendant must negative the possibility that the fire was caused by them. In Davis v. Teche Lines, Inc., supra, the Supreme Court said exactly the same thing, conceding that there *Page 663 
are cases in which a defendant may be held liable where it cannot show the cause of the fire, but adding that in each of those cases "specific acts of negligence are also proven, as in the case of Jones v. Shell Petroleum Corporation, supra."
Here no act of negligence is shown and, if defendant is to be held liable, it is solely because of the suspicious fact that the car, which apparently had been in good condition, was found to be on fire some 20 or 30 minutes after Mr. Landry had disconnected the speedometer. This suspicious circumstance does not warrant a holding that the defendant is liable. Our original decree which maintained the exception of no right of action and dismissed the suit on that exception is recalled and amended to the extent that the exception of no right of action is overruled, and, on the merits, plaintiff's suit is dismissed at his cost.
Original decree amended, judgment reversed.